Filed 10/19/15  (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>LATHEL DOUGLAS,<br><br>  Defendant and Appellant. | A140279<br><br>(Contra Costa County<br>Super. Ct. No. 51316363)<br><br>ORDER MODIFYING OPINION AND<br>DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 28, 2015, be modified as follows:

1. On page 17, in the third full paragraph after the sentence ending "sent to prison for the earlier offense," add as footnote nine the following footnote, which will require renumbering of all subsequent footnotes:

> [9] A document submitted to the court at the suppression hearing included the following statement under oath from Douglas's probation officer:  "On September 23, 2010, the Superior Court in Contra Costa convicted Lathel DOUGLAS of violation of PC 12021(a)(1)—Felon Possessing Firearm and PC 69—Resisting Executive Officer.  On December 27, 2010, the defendant was paper committed to the California Department of Corrections And Rehabilitation for 16 months under docket number 05-071417-0.  The defendant was returned to prison for a parole violation."  It is fair to infer that Douglas's return to prison occurred sometime in 2011 and resulted from the weapons-related arrest described by Detective Bailey.

1

Douglas's counsel did not cross-examine Bailey about the earlier arrest, nor did he question the probation officer about Douglas's parole violation. Thus, he did nothing to call into question Bailey's testimony as to the timing of the prior arrest.

There is no change in the judgment.

Appellant's petition for rehearing is denied.


Dated:_____                    _____, P. J.

*People v. Douglas* (A140279)


Trial Court:                              Contra Costa County Superior Court


Trial Judge:                             Hon. Jeffrey Tauber


Counsel for Defendant and Appellant:     Paul Kleven, by appointment of
                                         the Court of Appeal under the First District
                                         Appellate Project's Independent-Case System


Counsel for Plaintiff and Respondent:    Kamala D. Harris
                                         Attorney General of California

                                         Dane R. Gillette
                                         Chief Assistant Attorney General

                                         Gerald A. Engler
                                         Senior Assistant Attorney General

                                         Eric D. Share
                                         Supervising Deputy Attorney General

                                         Ronald E. Niver
                                         Deputy Attorney General

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LATHEL DOUGLAS,<br><br>        Defendant and Appellant. | A140279<br><br>(Contra Costa County<br>Super. Ct. No. 51316363) |

Lathel Douglas, after being apprehended in Richmond carrying a loaded .380 caliber semiautomatic handgun, pled guilty to being a felon in possession of a firearm (Pen. Code,[1] § 29800) and admitted a prior prison commitment (§ 667.5, subd. (b)) in exchange for a lower-term prison sentence. The issue on appeal is whether the weapon seized from him should have been suppressed as the fruit of an unconstitutional detention.

The People justify the detention on the ground Douglas was on postrelease community supervision (PRCS) and therefore subject to a mandatory search condition. (§§ 3450, 3453, subd. (f), 3465.) Douglas claims this rationale does not apply because the police officer who stopped him did not have sufficient advance knowledge of his search condition to lawfully detain him. We conclude the officer's knowledge gave him an "objectively reasonable belief" Douglas was on PRCS. Since that belief also proved to be accurate, the detention was lawful and we affirm the judgment.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

**BACKGROUND**

On May 19, 2013, Richmond Police Detective Miles Bailey was on duty with a Special Investigation Division parole unit. One of Detective Bailey's duties was to monitor individuals who were on probation and parole. Shortly before 9:30 p.m., Detective Bailey was in uniform and riding in the passenger seat of a marked police patrol car westbound on Nevin Avenue near 21st Street when he spotted Douglas sitting at the wheel of a parked car. Bailey, with a partner that night, was investigating "recent gun violence" in the area. He recognized Douglas because he had arrested him in 2011 for a firearms-related offense. He may also have contacted Douglas on a few occasions since then but could not recall how recently.

Detective Bailey testified he "knew [Douglas] was on post-risk [*sic*: postrelease] community supervision probation" because part of his job was to "regularly monitor to see who is on probation and parole." Bailey decided to speak with Douglas and search him to ensure he was complying with the terms of his PRCS. Although in the course of his monitoring duties Bailey routinely used a countywide law enforcement database known as the Automated Regional Information Exchange System (ARIES) and lists regularly supplied by the probation department, he did not consult ARIES on the spot before initiating contact with Douglas because he did not have time. He did not recall when he had last checked Douglas's status on ARIES, but he did recall having seen Douglas's name on a list of active probationers issued by the probation department sometime within the preceding two months.

In an apparent attempt to pull away from the curb, Douglas moved his car forward a few feet as Detective Bailey approached on foot, which made Bailey think Douglas was trying to flee. Bailey ordered Douglas to stop his car. Douglas put the car in reverse, and Bailey again told him to stop. When Douglas's car came to a stop, Bailey ordered him out of the car. For his own safety, Bailey pinned Douglas between the car's door and frame. A short scuffle ensued, and Bailey handcuffed Douglas. Bailey testified at the preliminary hearing that, as he was handcuffing Douglas, a loaded .380 caliber semiautomatic handgun fell from Douglas's hand or arm area to the floorboard of the car.

After being handcuffed, and in response to Bailey's question, Douglas admitted he was on probation. Bailey then conducted a patdown search of Douglas for weapons.

Douglas's probation officer testified that Douglas had been on PRCS and was originally scheduled to be discharged on April 17, 2013, about a month before his encounter with Detective Bailey. Douglas's original discharge date was tolled for 36 days, however, because his PRCS was suspended for failing to keep in touch with his probation officer.[2] His PRCS file was therefore not closed until three days after he was arrested in this case.

Douglas filed a motion to suppress the gun as evidence, arguing it was the fruit of an unlawful detention. After hearing the above testimony, the judge found that Detective Bailey "had sufficient evidence to make contact and . . . before a detention was ever accomplished . . . the defendant moved the vehicle in such a manner as to increase the probability that there was probable cause to believe that he was in violation of his probation, and/or in violation of the law, and . . . the officer acted within his . . . role as a peace officer in stopping the vehicle and searching the defendant and the vehicle." Upon denial of his suppression motion, Douglas entered a guilty plea pursuant to a plea agreement, admitted the enhancement, and was sentenced to sixteen months in state prison.

## DISCUSSION

### I.     Douglas's Contentions

Douglas challenges the constitutionality of the detention that led to Detective Bailey's discovery of the weapon. He contends Bailey did not have actual, current

---

[2] The probation officer had issued a warrant under *People v. Ramey* (1976) 16 Cal.3d 263, 275–276, in November 2012 when he could not locate Douglas, though he never filed a formal notice in court alleging a PRCS violation. The issuance of the warrant tolled Douglas's PRCS. (§ 3456, subd. (b).) PRCS remained suspended until Douglas was arrested on January 3 or 4, 2013, thereby extending Douglas's PRCS for 36 days.

knowledge he was on searchable PRCS[3] and also did not have reasonable suspicion he was engaged in criminal activity. Hence, he claims, the People failed to prove an exception to the warrant requirement.

We see the appeal as raising several distinct but closely related questions: (1) Must an officer who knows an individual is on PRCS also have specific knowledge of a search condition imposed upon him or her? (2) What quantum of "advance knowledge" must an officer have of a subject's PRCS status before conducting a PRCS detention and search? (3) Was there substantial evidence that Detective Bailey knew in advance that Douglas was on PRCS, or did his failure to check a current computer database of probation information render his detention of Douglas unreasonable? (4) Was Detective Bailey's belief that Douglas was subject to PRCS search objectively reasonable?

## II.     Legal Overview and Standard of Review

### A. *The Fourth Amendment and Standard of Review*

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.)

A seizure of the person occurs "whenever a police officer, by means of physical force or show of authority, restrains the liberty of a person to walk away." (*People v. Celis* (2004) 33 Cal.4th 667, 673; see *Michigan v. Chesternut* (1988) 486 U.S. 567, 573 [" 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave' "]; *People v. Brown* (2015) 61 Cal.4th 968, 976–977 [same].) There are two different bases for detaining an individual short of

---

[3] As Douglas points out, the prosecution and the trial court referred to the search as a "probation" search, when in fact it was a PRCS search. Douglas argues he should also be treated as a probationer on appeal. We decline that request because, as we shall explain, the distinction is more than semantic.

4

having probable cause to arrest: (1) reasonable suspicion to believe the individual is involved in criminal activity (*Terry v. Ohio* (1968) 392 U.S. 1, 30–31 (*Terry*)); and (2) advance knowledge that the individual is on searchable probation or parole (*In re Jaime P.* (2006) 40 Cal.4th 128, 136, 139 (*Jaime P.*); *People v. Reyes* (1998) 19 Cal.4th 743, 754 (*Reyes*)).  Douglas contends neither standard was met in this case, and since the gun was found as a result of the initial detention, it should have been suppressed.  In meeting a challenge to the lawfulness of a warrantless search or seizure, the People are obligated to prove by a preponderance of the evidence that the search or seizure fell within one of the recognized exceptions to the warrant requirement.  (*People v. James* (1977) 19 Cal.3d 99, 106, fn. 4; *People v. Rios* (2011) 193 Cal.App.4th 584, 590.)  Probation and parole searches are among those exceptions.  (*People v. Schmitz* (2012) 55 Cal.4th 909, 916 (*Schmitz*); *People v. Woods* (1999) 21 Cal.4th 668, 674–675 [probation exception based on advance consent].)  As we shall discuss, because of its similarity to parole, so is a search under a PRCS search condition.

When the trial court rules on a suppression motion, it " ' "(1) finds the historical facts; (2) selects the applicable rule of law; and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated." ' "  (*People v. Carter* (2005) 36 Cal.4th 1114, 1140.)  On appeal, we independently review the second and third determinations, but we apply " ' "the deferential substantial-evidence standard" ' "  to the court's determination of the historical facts.  (*Ibid*.)  Even if our reasoning differs from the trial court's, the trial court's ruling must be upheld if there is any basis in the record to sustain it.  (*People v. Marquez* (1992) 1 Cal.4th 553, 578.)

*B.  Probation and parole searches*

Suspicionless searches are lawful in California for both probationers and parolees, so long as they are not conducted arbitrarily, capriciously, or for harassment.  (*People v. Bravo* (1987) 43 Cal.3d 600, 610 [probationers]; *Reyes*, *supra*, 19 Cal.4th at p. 752 [parolees].)  The United States Supreme Court has approved this rule in the case of parole searches (*Samson v. California* (2006) 547 U.S. 843, 856–857), but has not yet addressed

it in the case of probation searches. (Erwin, et al., California Criminal Defense Practice (2014) §§ 22.08[2][a] & [2][b], pp. 22–96, 22–99.)

The California Supreme Court held decades ago that probation searches may be conducted without suspicion. The rationale is that the probationer agreed in advance to a search condition at the time probation was granted, and a search pursuant to that consent may be conducted without reasonable suspicion of criminal behavior or a violation of probation. (*Bravo*, *supra*, 43 Cal.3d at pp. 608, 610 (*Bravo*); *People v. Medina* (2007) 158 Cal.App.4th 1571, 1576–1577 & fn. 2 (*Medina*); *United States v. King* (9th Cir. 2013) 736 F.3d 805, 807–810.)[4] The probation condition at issue in *Bravo* authorized search "without a warrant" but did not specify "without cause." (*Bravo*, *supra*, at p. 602.) The court held the clause allowed for suspicionless search, refusing to read a "reasonable cause" requirement into the condition. (*Id.* at pp. 610–611.) In so holding the California Supreme Court cautioned that a probation search may not be conducted "for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes," nor may the search be arbitrary, capricious or harassing. (*Id.* at p. 610.)

The rationale for upholding a suspicionless parole search is different than it is for a probation search because in the parole context the search is justified by "the state's compelling interest to supervise parolees and to ensure compliance with the terms of their release." (*Schmitz*, *supra*, 55 Cal.4th at p. 921.) Declining to address whether a parole search was justified by a prior consent rationale, the United States Supreme Court in *Samson* adopted a totality of the circumstances balancing test to evaluate the reasonableness of a warrantless and suspicionless parole search. (*Samson*, *supra*, 547 U.S. at p. 852, fn. 3; see *Schmitz*, *supra*, at p. 921.) This approach "recognizes that

---

[4] The scope of the search is confined to the consent given (*Bravo, supra,* 43 Cal.3d at p. 605), and must be assessed "by reference to the probation order" (*id.* at p. 606). The United States Supreme Court has not to date adopted the "consent" theory of justification for warrantless and suspicionless probation searches. (See *United States v. Knights* (2001) 534 U.S. 112, 118 [probation]; see also *Samson*, *supra*, 547 U.S. at p. 852, fn. 3 [parole].)

6

'parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.' "[5] (*Schmitz*, *supra*, at p. 921, quoting *Samson*, *supra*, at p. 850.)  Thus, a parole search may be justified by a proper supervisory purpose or other law enforcement needs.

Because a search condition is statutorily mandated for all parolees (§ 3067; *Schmitz*, *supra*, 55 Cal.4th at p. 916; see fn. 6, *post*), the officer need only know that the individual is on parole.  (*People v. Middleton* (2005) 131 Cal.App.4th 732, 739–740 (*Middleton*).)  " '[A]n officer's knowledge of parole status [is] equivalent to knowledge of a parole search condition.' "  (*Id.* at p. 739, quoting *In re Tyrell J.* (1994) 8 Cal.4th 68, 94 (dis. opn. of Kennard, J.), overruled in *Jaime P.*, *supra*, 40 Cal.4th at p. 139.)  In the case of both probation and parole searches, the officer must have known the individual was on probation or parole before conducting the search.  Without such advance knowledge, a search cannot rightly be justified as a parole or probation search, for the officer does not act pursuant to the search condition.  (*Sanders*, *supra*, 31 Cal.4th at p. 333; *Middleton*, *supra*, at p. 738.)

As the California Supreme Court has held, "a search founded on neither reasonable suspicion of criminal activity nor advance knowledge of a probation search condition can aptly be characterized as arbitrary."  (*Jaime P., supra*, 40 Cal.4th at p. 138; see *People v. Hoeninghaus* (2004) 120 Cal.App.4th 1180, 1188.)  Likewise, the officer must have advance knowledge of the parole status of a parolee subjected to a parole search.  (*Sanders*, *supra*, 31 Cal.4th at p. 333; *In re Martinez* (1970) 1 Cal.3d 641, 646.)  But because a suspicionless search condition is imposed on all parolees by statute,[6] so

---

[5] The same state interest in supervising probationers has been identified as an additional justification for warrantless probation searches.  (*People v. Sanders* (2003) 31 Cal.4th 318, 325 (*Sanders*); *Griffin v. Wisconsin* (1987) 483 U.S. 868, 873–875.)

[6] Section 3067, subdivision (b)(3), requires that an inmate eligible for parole or PCRS be advised before release that he or she is "subject to search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without a search warrant or with or without cause."  At the time *Samson* was decided, would-be parolees were required to consent to the search condition or lose their

7

long as an officer knows a subject is on parole—without more—that knowledge is " 'equivalent' " to knowing he is subject to suspicionless search. (*Middleton*, *supra*, 131 Cal.App.4th at p. 739.)

By contrast, conditions of probation may be imposed so long as they are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." (§ 1203.1, subd. (j).) The courts therefore attempt to individualize the terms and conditions of probation to fit the offender. (See *People v. Lent* (1975) 15 Cal.3d 481, 486; *People v. Contreras* (2015) 237 Cal.App.4th 868, 878.) A search condition is not mandated by statute for every probationer, and probation search clauses are not worded uniformly. (See *United States v. King*, *supra*, 736 F.3d at p. 811 & fn. 1 (dis. opn. of Berzon, J.).) Indeed, the California Supreme Court has recognized that a court could insert into a probation search condition a "reasonable cause" requirement. (*Bravo*, *supra*, 43 Cal.3d at p. 607, fn. 6.) Thus, in the case of probation searches, the officer must have some knowledge not just of the fact someone is on probation, but of the existence of a search clause broad enough to justify the search at issue. (See *Bravo*, *supra*, 43 Cal.3d at pp. 605, 606, 608.)

### III. Detention Incident to a PRCS Search

A. *If a police officer knows an individual is on PRCS, he may lawfully detain that person for the purpose of searching him or her, so long as the detention and search are not arbitrary, capricious or harassing.*

Douglas cannot and does not deny he was subject to PRCS at the time he was stopped. He does not contend that Detective Bailey needed reasonable suspicion to detain him, so long as Detective Bailey had advance knowledge of his PRCS status and

opportunity for parole. (Former § 3060.5, discussed in *Samson*, *supra*, 547 U.S. at p. 852, fn. 3.) Section 3060.5 has since been amended to eliminate the loss of parole as a consequence of failure to consent. (Stats. 2012, ch. 43, § 45.)

8

search condition.  He does contend, however, that his detention was unconstitutional because Detective Bailey had insufficient "knowledge" of his PRCS search condition.

The Postrelease Community Supervision Act, adopted as part of the 2011 Realignment Legislation addressing public safety (Realignment Act), provides for local post-incarceration supervision of less serious offenders released from state prison, transferring their supervision from state parole authorities.  (§ 3450 et seq.; Stats. 2011, ch. 15, § 479.)  Thus, among other things, the Realignment Act provides that a defendant sentenced to state prison is "subject to a mandatory period of supervision following release, either parole supervision by the state (§ 3000 et seq.), or postrelease community supervision by a county probation department. (§ 3450 et seq.)"  (*People v. Cruz* (2012) 207 Cal.App.4th 664, 672.)  The most serious offenders are not eligible for PRCS, such as those who have committed serious or violent felonies (§§ 667.5, subd. (c), 1192.7, subd. (c)) and high risk sex offenders.  (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 434; § 3451, subd. (b); Cal. Code Regs., tit. 15, § 3079.1.)  A PRCS search condition, like a parole search condition, is imposed on all individuals subject to PRCS.  (§ 3465.)

Douglas argues in essence that PRCS should be treated more like probation than parole, presumably because the supervisory function in such cases is performed by local probation officers and because PRCS releasees are less serious offenders than those on parole.  He contends a police officer who conducts a PRCS search must testify not only that he knew the person searched was on PRCS, but that he knew the individual was subject to a search condition.  We are unpersuaded.

PRCS has been compared to parole supervision, and distinguished from probation.  (*People v. Jones* (2014) 231 Cal.App.4th 1257, 1266 ["a defendant on PRCS is not on probation and PRCS is similar to parole"].)  PRCS, like parole, involves post-incarceration supervision and includes a statutory mandatory search condition:  "The person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency

9

or by a peace officer."[7]  (§ 3453, subd. (f); see § 3465.)  The district attorney also submitted in evidence a copy of Douglas's PRCS paperwork, signed by Douglas, which contains the following search condition:  "You and your residence and any other property under your control may be searched without a warrant day or night by an agent of the supervising county or any peace officer or law enforcement officer."

Viewing PRCS in the context of its statutory genesis in the Realignment Act and the broader legal landscape governing parole and probation in which it fits, we conclude that an individual who has been released from custody under PRCS is subject to search (and detention incident thereto) so long as the officer knows the individual is on PRCS. PRCS, like parole, involves the post-incarceration supervision of individuals whose crimes were serious enough to result in a prison sentence and thereby implicates important public safety concerns, as well as the state's " ' "overwhelming" ' " interest in supervising released inmates. (*Samson*, *supra*, 547 U.S. at p. 853.)  It is not necessary for the officer to recite or for the People to prove the precise terms of release, for the search

_____

[7] There is some disparity in the statutory language as to the exact authority granted law enforcement officers in conducting a statutory search for those released on PRCS. On the one hand, section 3067, which applies to both parolees and those released on PRCS, requires that such individuals be notified before release that they are "subject to search or seizure by a probation or parole officer or other peace officer at any time of the day or night, with or without a search warrant or *with or without cause*."  (Italics added.) This suggests a legislative intent to treat PRCS releasees identically with parolees for purposes of search and seizure, and evinces an intent that both categories of releasees would be subject to suspicionless search.  The statutory language actually authorizing warrantless searches of PRCS releasees omits the "with or without cause" language. (§ 3465.)

Nevertheless, *Bravo*, *supra*, 43 Cal.3d at pp. 608–610, held a probation condition that specified the probationer must submit to search "without a warrant" but did not specify "without cause" allowed for a search even without reasonable suspicion.  The reasoning was that the probationer's acceptance of the conditions of probation amounted to "a complete waiver of [his or her] Fourth Amendment rights, save only his [or her] right to object to harassment or searches conducted in an unreasonable manner." (*Id.* at p. 607.)  "[A] search condition of probation that permits a search without a warrant also permits a search without 'reasonable cause,' as the former includes the latter." (*Id.* at p. 611.)  Thus, our Supreme Court has construed a warrantless search condition to be tantamount to a suspicionless search condition.

10

condition is imposed by law, not by consent. As in the case of a parole search, an officer's knowledge that the individual is on PRCS is equivalent to knowledge that he or she is subject to a search condition. (Cf. *Middleton, supra*, 131 Cal.App.4th at p. 739.)

B. *An officer "knows" a subject is on PRCS if his belief is objectively reasonable.*

Douglas argues a police officer must "have knowledge, not probable cause to believe, that an individual has a search condition before relying on that condition to detain an individual." He thereby effectively raises the question: What is the quantum and character of information that an officer must have to justifiably detain and search a person as a PRCS releasee? Must the officer know to an absolute certainty―based on up-to-the-minute information―that the subject is on PRCS (as Douglas seems to contend), or is it enough that he entertains a "reasonable suspicion" under *Terry* that the individual is on PRCS, as the People seem to suggest?

The parties have cited no cases dealing with this precise issue, and our research has disclosed none. We believe the Supreme Court had something less than perfectly up-to-the-minute certainty in mind when it spoke of "advance knowledge" in this context. We further conclude the formulation most faithful to the analogous precedents is the "objectively reasonable belief" standard: the officer's belief in the subject's status as a probationer, parolee or person subject to PRCS must have been objectively reasonable in the totality of the circumstances. In practical application, that standard—as regulated in the courtroom by the rules of evidence—is enough to put the People to their proof, without imposing an unduly rigid formula for how the standard must be met.

The California Supreme Court applied an "objectively reasonable" standard in *People v. Machupa* (1994) 7 Cal.4th 614, 632 (*Machupa*), where the court considered whether police officers investigating a shooting had been "invited" into a neighbor's house to inspect his guns. (*Id.* at pp. 618–619.) The officers had told the neighbor it was necessary for officer safety that they accompany him into the house. (*Id.* at p. 618.) Once inside, the police saw marijuana in plain view, arrested the neighbor, and secured the house. (*Ibid.*) They then obtained a search warrant and returned to search the premises and seize the contraband. (*Id.* at pp. 618–619.)

11

The defendant moved to suppress the evidence.  The state attempted to justify the later search and seizure under the warrant by relying on what is sometimes called the good faith exception to the exclusionary rule.  (*United States v. Leon* (1984) 468 U.S. 897, 922 (*Leon*).)  The magistrate who heard the motion found no valid consent to enter was given, but denied the suppression motion on the basis of the *Leon* exception.  (*Machupa*, *supra*, 7 Cal.4th at pp. 619–620.)  The Court of Appeal reversed, finding the affidavit to support the warrant was "internally contradictory" and could not have formed the basis for objectively reasonable reliance by the officers who conducted the search, as required under *Leon*.  (*Id.* at pp. 620–621, 623, 630.)  Since the contraband seized was the " 'fruit of the poisonous tree' " tracing back to the illegal warrantless entry (*id.* at p. 622), the Supreme Court held the *Leon* good faith exception did not apply.  (*Id.* at p. 632.)

In the Supreme Court, the Attorney General offered an additional justification for the initial entry, namely that the officers had made a "reasonable mistake of fact" in believing they had consent to enter.  (*Machupa*, *supra*, 7 Cal.4th at p. 632.)  The Attorney General asked the Supreme Court to remand the matter so the Court of Appeal could consider that theory.  (*Ibid.*)  The Supreme Court refused to remand, but in discussing the issue cited *Illinois v. Rodriguez* (1990) 497 U.S. 177 (*Rodriguez*) and acknowledged the applicability of the "objectively reasonable" standard in that context.  (*Machupa*, *supra*, at pp. 632–633.)

An "objectively reasonable" standard has also been adopted in the context of probation searches to govern the analogous situation where an officer searches premises that he believes to be inhabited by a probationer.  (*People v. Downey* (2011) 198 Cal.App.4th 652, 661 ["objectively reasonable grounds to believe" (italics omitted)]; *People v. Tidalgo* (1981) 123 Cal.App.3d 301, 307 [whether belief was "objectively reasonable"].)  These cases take the officers' beliefs into account in upholding searches conducted at the wrong address based on the "objectively reasonable" but mistaken belief that a probationer or parolee lived there.  The question before us is far narrower and easier to resolve.  We need only decide whether Detective Bailey's "objectively

12

reasonable belief" in Douglas's PRCS status justified the detention where his belief turned out to be correct.

In a context somewhat similar to ours, *People v. Lazalde* (2004) 120 Cal.App.4th 858 applied the objectively reasonable belief in consent standard, citing *Machupa*, *supra*, to determine whether an officer who conducted a search under an invalid search warrant without knowledge that the defendant was on probation could nevertheless rely on a later-discovered probation search condition under a theory of advance consent. The Sixth District held the advance knowledge requirement foreclosed any such reliance. (*Id.* at pp. 863–865.) "As it is undisputed that the searching officer here was unaware of who appellant was or that he was subject to a search condition, the officer could not have believed that he had appellant's consent to search." (*Id.* at p. 865.)

We view *Rodriguez, supra*, 497 U.S. 177, a case cited by the People, as the closest fit by analogy. In that case, the Supreme Court considered the legality of a police entry into an apartment to arrest a man accused by his girlfriend of battery. The girlfriend, contacted at another location, led the officers to believe she lived in the apartment, gave them permission to enter, and unlocked the door for them using her key. Once the police entered they discovered drugs and other contraband. (*Id.* at pp. 179–180.) It turned out, however, the girlfriend did not live there and did not have authority to grant them entry. (*Id.* at p. 180.) The Supreme Court concluded the police could enter as long as their belief in the validity of consent was objectively reasonable. "Even when the invitation [to enter] is accompanied by an explicit assertion that the person lives there," the court held, "the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises?" (*Id.* at p. 188.) Granting that the circumstances here are not precisely the same, the analogy and the standard adopted there seem apt.

13

Douglas cites no cases that justify a standard more stringent than "objectively reasonable belief." The cases upon which he relies involve situations where the officer who conducted the search was totally "unaware" of the arrestee's status as a probationer or parolee until after the search had been conducted. (*Jaime P.*, *supra*, 40 Cal.4th at p. 130; *Sanders*, *supra*, 31 Cal.4th at p. 322; *Myers v. Superior Court* (2004) 124 Cal.App.4th 1247, 1250 ["did not know he was on probation"].) Despite historical inconsistency, the more recent cases in that vein have uniformly held that a search made without such awareness cannot be justified after the fact by the officer's later-acquired knowledge that the subject was on probation or parole. (*Sanders*, *supra*, at p. 335; *People v. Robles* (2000) 23 Cal.4th 789, 793 [cohabitant on probation]; *Medina*, *supra*, 158 Cal.App.4th at p. 1577; *People v. Hoeninghaus*, *supra*, 120 Cal.App.4th at p. 1184; *United States v. Caseres* (9th Cir. 2008) 533 F.3d 1064, 1076.) It is in this context that the requirement of "advance knowledge" (*Jaime P.*, *supra*, at p. 139) or "awareness" (*Sanders*, *supra*, at p. 332) of the status giving rise to the search condition has been articulated. We find such cases to be of little assistance in deciding the issue before us.[8]

Adapting an objectively reasonable belief standard to the present context, the question becomes whether, judged against an objective standard, the facts available to Detective Bailey at the moment he detained Douglas would have warranted an officer of reasonable caution to believe Douglas was on PRCS. Or to put it most simply—Was Bailey's stated belief that Douglas was on PRCS objectively reasonable?

---

[8] Douglas also cites a number of cases in which a detention was upheld where the police had more current or more reliable information about the detainee's current probationary status, usually because they checked with the defendant's parole or probation officer or confirmed his status with radio dispatch before conducting a search. (*Samson*, *supra*, 547 U.S. at pp. 846–847; *Schmitz*, *supra*, 55 Cal.4th at pp. 930–933; *Middleton*, *supra*, 131 Cal.App.4th at p. 735; *United States v. Woodson* (N.D. Cal. 2011) 2011 U.S. Dist. LEXIS 135271, at pp. *21–*22.) But as the People point out, " 'This dubious logic—that an opinion upholding the constitutionality of a particular search implicitly holds unconstitutional any search that is not like it' (*United States v. Knights*, *supra*, 534 U.S. at p. 117)—provides no framework for the determination of whether Detective Bailey's knowledge was sufficient."

*C. There was substantial evidence to support the trial court's implied finding that Detective Bailey "knew" Douglas was on PRCS, and his failure to consult ARIES in the circumstances did not negate that knowledge.*

In the present case substantial evidence supported the court's implicit finding that Detective Bailey believed Douglas was on PRCS. Bailey's knowledge of Douglas's status on PRCS was significantly greater than that of the officers in cases such as *Jaime P.*, *Sanders*, or *Robles* where the officer involved was totally "unaware" of the probationary or parole status of someone they searched. Bailey testified he "knew" Douglas was on PRCS and detained him expressly on that basis.

Douglas argues "Bailey's vague recollection of having seen Douglas's name on a probation list within the last two months was legally insufficient to meet the prosecution's burden . . . ." Preliminarily, we reject Douglas's argument that the probation printout was "[t]he sole basis for Detective Bailey's 'knowledge' . . . ." Douglas's briefing ignores Detective Bailey's preexisting familiarity with Douglas based on a prior arrest. That familiarity was substantiated with specifics as to the nature of Bailey's prior encounter with Douglas and when it occurred: Bailey testified he had arrested Douglas in 2011 on a "firearms related offense." Thus, he had considerably more information than what he acquired by consulting the list of probationers during the preceding two months. By finding that Detective Bailey had sufficient information to "increase the probability that there was probable cause to believe that [Douglas] was in violation of his probation [*sic*]," the court impliedly found that Detective Bailey knew—or at least believed—Douglas was on PRCS release. And there was undoubtedly substantial evidence to support that finding.

Neither party has explained in detail how we should review such a finding. In one sense, the question whether an officer "knew" or "reasonably believed" a subject was on probation or PRCS is one of pure historical fact to which we should defer if supported by substantial evidence. (Cf. *People v. Downey*, *supra*, 198 Cal.App.4th at p. 658 [whether police " 'reasonably believed' " probationer lived at the address searched is a question of fact reviewed deferentially]; *People v. Tidalgo*, *supra*, 123 Cal.App.3d at p. 306–307

15

[same]; *People v. Palmquist* (1981) 123 Cal.App.3d 1, 11–12 [same], disapproved on another point by *People v. Williams* (1999) 20 Cal.4th 119, 135.)  In another sense, however, the question of the quantum of knowledge required imports a legal standard, making it a mixed question of fact and law, reviewable either deferentially or independently, depending on which aspect of the question predominates.  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384; *People v. Gamache* (2010) 48 Cal.4th 347, 385; *In re D.S.* (2014) 230 Cal.App.4th 1238, 1245.)  As we see it, *what facts* the officer knew and whether he subjectively believed the defendant was on PRCS are questions of historical fact for the trial court.  Such purely factual determinations should be reviewed for substantial evidence.  No one contests that Detective Bailey truly subjectively believed that Douglas was on PRCS.  He testified he "knew" Douglas was on PRCS, which was substantial evidence in and of itself to support a finding of subjective belief.  No evidence suggests that Bailey's claim of knowledge was contrived or that Bailey had information that Douglas was not on PRCS.

But Douglas would have us impose upon police officers in the field a sort of due diligence requirement.  Douglas argues, "Although Detective Bailey claimed that he 'knew that [Douglas] was on [PRCS] probation,' he did nothing to confirm Douglas's status that night, had never communicated with the officer supervising Douglas, and could not recall when he had last checked Douglas's status on ARIES."  He thereby tries to bring himself within the purview of the cases cited above that have suppressed evidence where the officer did not have *any* "advance knowledge" of a probation search condition.  (E.g., *Jaime P.*, *supra*, 40 Cal.4th at p. 139.)

Detective Bailey testified there was not enough time to run an ARIES check, and the trial court evidently credited his testimony.  In the circumstances, the failure to run a computer check did not undermine Bailey's own belief in Douglas's PRCS status, and as we shall explain, did not render his belief objectively unreasonable.

16

*D. In light of the totality of the circumstances, and employing independent review, we conclude Detective Bailey's belief in Douglas's PRCS status—and his actual detention of Douglas—were objectively reasonable.*

Unlike the question of Bailey's subjective belief, whether the officer's claimed knowledge that Douglas was on PRCS was *objectively reasonable* in light of the known facts—and in light of the demands of the Fourth Amendment—implicates " 'a critical consideration, in a factual context, of legal principles and their underlying values' " (*Haworth v. Superior Court*, *supra*, 50 Cal.4th at p. 384; accord, *In re D.S.*, *supra*, 230 Cal.App.4th at p. 1245), thereby presenting a legal issue that should be reviewed de novo on appeal. (See *Ornelas v. United States* (1996) 517 U.S. 690, 696–697, 699; *People v. Butler* (2003) 111 Cal.App.4th 150, 159; see also *People v. Cromer* (2001) 24 Cal.4th 889, 894–896.)

Douglas concedes there was substantial evidence to support an implied finding that Detective Bailey had seen his name on a probation list within two months prior to the detention. Yet, Douglas contends that list was not current enough to give the officer accurate "knowledge" of Douglas's searchable status so as to allow him to detain Douglas for a PRCS search. We understand this as a claim that Bailey's asserted "knowledge" had no objectively reasonable basis. And we disagree.

One of the key distinguishing features of this case is that Detective Bailey had personally been involved in a previous arrest of Douglas for a weapons violation approximately two years before the current offense. Detective Bailey also testified he knew Douglas was on PRCS, not probation, which suggests he knew Douglas had been sent to prison for the earlier offense. Based on the officer's own familiarity with the prior arrest and his presumed knowledge of the law pertaining to firearms offenses, related punishments, and the usual length of PRCS (Evid. Code, § 664), it was reasonable for him to make a rough calculation that Douglas would still be on PRCS as a result of that earlier offense. This appears to have been the foundational preexisting basis of Detective Bailey's "knowledge." His further information that Douglas's name appeared on a list of active probationers within the past two months tended to substantiate the officer's

17

preexisting knowledge.  Part of Detective Bailey's job was to keep tabs on probationers and parolees, and he had access to computerized information and updates from the probation department to keep him apprised of probationers' and parolees' status.  While the list from the probation department (not introduced into evidence) did not constitute the universe of Detective Bailey's knowledge, it was a significant ingredient.[9]  And it provided objective corroboration for Detective Bailey's belief that Douglas remained subject to an active PRCS search condition.  Bailey was not just acting on a hunch that Douglas was on PRCS.  He had an objective basis for his belief.

In addition, as the trial court found, Douglas's furtive action in trying to pull away from the curb to avoid contact with Detective Bailey gave further support to the inference that Douglas was still on PRCS and trying to avoid a search, and provided increased suspicion to detain him.  As the People argue, Douglas was not seized when Detective Bailey first approached his car, as there was no use of force or show of authority.  (See *People v. Bowers* (2004) 117 Cal.App.4th 1261, 1272; *People v. Gonzales* (1985) 164 Cal.App.3d 1194, 1196–1197; *People v. Sandoval* (1985) 164 Cal.App.3d 958, 962.)  The trial court's finding that Douglas was not detained until after he began to pull away from the curb and was ordered by Detective Bailey to stop is supported by substantial evidence.  (See *People v. Shields* (1988) 205 Cal.App.3d 1065, 1073 [applying substantial evidence test].)

We believe, too, the adequacy of the officer's knowledge must be assessed in the context in which the decision to detain and search arose.  We consider in this appeal not

---

[9]  An officer's testimony to information that he or she obtained from a file or an electronic database, without proof of that information by direct presentation of what the officer looked at in admissible form, is hearsay, just as an officer's reliance on second-hand information received from other officers would be hearsay, implicating the *Harvey-Madden* rule.  (See *People v. Madden* (1970) 2 Cal.3d 1017; *Remers v. Superior Court* (1970) 2 Cal.3d 659; *People v. Harvey* (1958) 156 Cal.App.2d 516.)  We have no occasion to address that issue in resolving this appeal.  Douglas made no *Harvey-Madden* objection to any of Bailey's testimony—and thus forfeited it.  (See *People v. Rogers* (1978) 21 Cal.3d 542, 547–548 [applying "bar against raising a *Harvey/Madden* issue for the first time on appeal"].)

whether Bailey sought out all available information or undertook the best possible course of action, but whether his decision to detain Douglas was objectively reasonable in light of the knowledge he had. Detective Bailey had to make a rapid evaluation of the circumstances of his encounter with Douglas through the filter of his preexisting knowledge of him—which called for judgment, and was not simply a binary matter of whether Bailey subjectively knew of Douglas's PRCS status or not. In light of the immediacy of the events, the failure to run a computer check to determine the currency of Douglas's PRCS status did not render Bailey's actions—or his belief in Douglas's PRCS status—objectively unreasonable. (Cf. *People v. Brown, supra,* 61 Cal.4th at p. 984 ["Police officers are required to make 'swift, on-the-spot decisions' and the Fourth Amendment does not require us to ' "indulge in 'unrealistic second-guessing' " ' of the officer's conduct."].)

In undertaking independent review of a parole or probation search, "we consider the totality of the circumstances known to the officer and balance the intrusion of the search upon the suspect's privacy with the need for such intrusion to promote legitimate government interests." (*People v. Smith* (2009) 172 Cal.App.4th 1354, 1360; accord, *Samson*, *supra*, 547 U.S. at p. 848; *Sanders*, *supra*, 31 Cal.4th at p. 333 [parole search].) In our minds that same inquiry should guide our determination of the reasonableness of the detention initiated to conduct such a search.

On one side of the scale we have Douglas's expectation of privacy, which was greatly diminished due to his being on PRCS. (*Samson*, *supra*, 547 U.S. at pp. 852, 855 [parolee]; *Schmitz*, *supra*, 55 Cal.4th at p. 921 [parolee].) Douglas knew he was still on active supervision and was subject to search, yet he tried to pull away from the curb in an apparent attempt at evasion. When the police responded, the extent of the intrusion was minimal: Douglas was simply asked to stop and exit his car. His own dangerous conduct in scuffling with Detective Bailey while armed with a loaded gun resulted in his being handcuffed. In these circumstances, whatever expectation of privacy Douglas had at that moment was slight.

On the other side of the scale, Detective Bailey was engaged in street-level police work in dangerous territory, specifically investigating at night a recent spate of gun violence. We are not blind to the realities of policing in urban areas where gun violence has reached epidemic proportions in recent years. Detective Bailey had a chance encounter with a known felon who had previously been involved in illegal weapons possession, and who began pulling his car away from the curb as Bailey approached. Circumstances did not permit a deliberative analysis of the probative value of various facts contributing to his fund of knowledge, with time for reflection. Given that Douglas apparently got out of the car with a loaded .380 caliber firearm in his hand, and a brief physical struggle ensued, the degree of hazard facing Detective Bailey seems plain enough. It is probably a stroke of luck that he emerged unscathed.

The information possessed by Bailey was reasonably reliable, ultimately proved to be accurate, and led to an objectively reasonable conclusion that Douglas was on PRCS and therefore subject to detention and search. His failure to run a current ARIES check did not render his preexisting belief in Douglas's PRCS status objectively unreasonable. We therefore conclude the court properly denied the section 1538.5 motion based on Detective Bailey's advance knowledge of Douglas's PRCS search condition. Because we conclude the detention was justified on that basis, we need not decide whether it was also a lawful *Terry* stop or, as the People argue, a lawful arrest.[10] (Cf. *People v. Woodall* (2013) 216 Cal.App.4th 1221, 1233–1234 [arrest warrant not required for probationer].)

**DISPOSITION**

The judgment is affirmed.

---

[10] The People argue that, once Douglas started to move his car forward, he was, in effect, fleeing from a police detention and therefore subject to arrest for "delaying" arrest. (§ 148; *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329–1330; *In re Gregory S.* (1980) 112 Cal.App.3d 764, 778; *People v. Allen* (1980) 109 Cal.App.3d 981, 986–987.)

20

_____
Streeter, J.

We concur:


_____
Reardon, Acting P. J.


_____
Rivera, J.


A140279/*People v. Douglas*

21

*People v. Douglas* (A140279)


| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Jeffrey Tauber |
| Counsel for Defendant and Appellant: | Paul Kleven, by appointment of the Court of Appeal under the First District Appellate Project's Independent-Case System |
| Counsel for Plaintiff and Respondent: | Kamala D. Harris Attorney General of California |
| | Dane R. Gillette Chief Assistant Attorney General |
| | Gerald A. Engler Senior Assistant Attorney General |
| | Eric D. Share Supervising Deputy Attorney General |
| | Ronald E. Niver Deputy Attorney General |