Filed 10/2/25  P. v. Prince CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES JESSE PRINCE,<br><br>    Defendant and Appellant. | A170549<br><br>(San Francisco City & County<br>  Super. Ct. No. CRI-23021394) |

Defendant Charles Jesse Prince moved to suppress evidence obtained from a warrantless search of his apartment which the People argued was lawfully conducted pursuant to the conditions of Prince's presentence release. Prince appeals from the trial court's denial of his motion.  We conclude that the search was unreasonable and that the good faith exception to the exclusionary rule is inapplicable and, therefore, the evidence should have been excluded.  Accordingly, we reverse.

## I.  BACKGROUND

In December 2023, while Prince was in custody at county jail on a separate case, police officers searched his apartment and found a loaded firearm.  In January 2024, the People filed a felony complaint charging Prince with three offenses based on his possession of the firearm.  Prince filed

a motion to suppress evidence obtained in the search, including the firearm, pursuant to Penal Code[1] section 1538.5. The People opposed the motion.

A superior court judge acting as magistrate heard the motion to suppress in conjunction with the preliminary hearing. San Francisco police officer Michael Coss testified to the following: In December 2023, a confidential reliable informant contacted him to inform him that Prince was suspected of selling narcotics and was possibly carrying a firearm. Officer Coss had prior contacts with Prince during the eight years he worked in the Tenderloin District and had previously arrested him. He conducted a records check and verified Prince's residency as an apartment complex on Brannan Street. At some point, Officer Coss learned that Prince had been arrested in a separate case. On December 29, 2023, he was at the courthouse and knew Prince had a hearing set that day. When Officer Coss asked the prosecutor the outcome of the hearing, the prosecutor informed him that Prince "was OR'd" and "as part of his OR he had a warrantless search condition."

Officer Coss testified that he then reviewed the minute order from the December 29, 2023 hearing. The minute order, which the People included with their opposition, stated that at the preliminary hearing in the other case, Prince pled guilty to one count of felony grand theft of personal property (§ 487, subd. (a)) and was released on his own recognizance (OR) pending sentencing. The minute order listed conditions of Prince's release, including "No New Arrests," "Warrantless Search," "No Weapons," and a one-year county jail "HAMMER." The minute order did not provide further details of the "Warrantless Search" condition.

Officer Coss testified that he believed he had legal authority to search Prince's residence because, as part of his OR conditions, "he had agreed to a

---

[1] Undesignated statutory references are to the Penal Code.

2

warrantless search." Officer Coss obtained Prince's key fob from his personal property at the jail. He went to the apartment complex and used the key fob to enter the complex and Prince's apartment. He and two other officers searched the apartment and found a bag on the bed in the bedroom containing a loaded firearm.

The prosecutor argued the minute order was dispositive and that Officer Coss understood Prince was released with a warrantless search condition which gave him authority to enter the apartment. The prosecutor claimed, "[I]f someone is on warrantless search, you know, part of the warrantless search is to submit their place, residence, and any property under their control to search." Defense counsel asserted that because the search was performed without a warrant it was the People's burden to establish the search was justified. He argued the minute order's detail identifying a warrantless search condition was insufficient for the People to establish that the scope of the search condition allowed a search of Prince's residence.

The magistrate reviewed the minute order and stated she was "satisfied there was a warrantless search condition. I think the question really is about whether or not that would include going into the apartment. I understand your cross about, you know, was there someone in there, was there indicia in the bag, so I understand all of that, but based on this now, I'm going to deny the motion to suppress." The magistrate held Prince to answer on two counts.

Prince was subsequently charged by felony information with possession of a firearm by a felon (§ 29800, subd. (a)(1); count I) and possession of ammunition (§ 30305, subd. (a)(1); count II). The information further alleged a prior strike conviction, sentencing enhancements, and aggravating

3

circumstances. In February 2024, Prince filed a motion to set aside the information pursuant to section 995 raising the suppression issue, which the People opposed. In March 2024, the superior court heard and denied Prince's section 995 motion.[2] One week later, Prince pled guilty to possession of a firearm. The court suspended imposition of sentence and placed Prince on probation for two years subject to various terms and conditions.

## II. DISCUSSION

Prince challenges the denial of his motion to suppress. He argues the search of his apartment was unlawful because there was no proof that the scope of the warrantless search condition imposed as part of his OR release included his residence. He further argues the good faith exception to the exclusionary rule does not apply.

### A. *General Legal Principles and Standard of Review*

Under the Fourth Amendment to the federal Constitution, " 'searches and seizures inside a home without a warrant are presumptively unreasonable.' " (*People v. Troyer* (2011) 51 Cal.4th 599, 602; see also *ibid.* [" 'the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" ' "].) "When a defendant raises a challenge to the legality of a warrantless search or seizure, the People are obligated to produce proof sufficient to show, by a preponderance of the evidence, that the search fell within one of the recognized exceptions to the warrant requirement. [Citations.] A probation search is one of those

---

[2] The People filed a motion for limited remand pursuant to section 995a, seeking to reopen the preliminary hearing so the magistrate could take judicial notice of the reporter's transcript from the December 29, 2023, hearing at which the search condition was imposed. The superior court denied the People's motion as moot given its ruling on Prince's section 995 motion. The People's motion is not at issue on appeal.

exceptions." (*People v. Romeo* (2015) 240 Cal.App.4th 931, 939 (*Romeo*).)  A probation search condition falls within the consent exception, that is, advance consent to the search has been given.  (*People v. Robles* (2000) 23 Cal.4th 789, 795.)  Here, the parties agree that the same principles for probation searches apply to a search condition imposed for presentence release.

The terms of probation (or presentence release) define the scope of any allowable search, thus an officer must have " 'advance knowledge of the search condition' before conducting a search."  (*Romeo*, *supra*, 240 Cal.App.4th at pp. 939–940.)  Additionally, the search may not exceed the scope of the condition.  (*People v. Bravo* (1987) 43 Cal.3d 600, 605.)  Interpretation of the scope of a search condition must be based on "an objective test."  (*Id.* at p. 606.)  The condition "must therefore be interpreted on the basis of what a reasonable person would understand from the language of the condition itself."  (*Id.* at p. 607; accord, *Romeo*, at p. 950.)

A defendant may move to suppress evidence on the ground that "[t]he search or seizure without a warrant was unreasonable" and may make the motion at the preliminary hearing based on the evidence introduced by the People.  (§ 1538.5, subds. (a)(1)(A), (f)(1).)  In such cases, the hearing magistrate "tries the facts, resolving credibility issues and conflicts in the evidence, weighing the evidence, and drawing appropriate inferences." (*Romeo*, *supra*, 240 Cal.App.4th at p. 941.)  When the defendant subsequently raises the suppression issue in a section 995 motion, the appellate court reviews the magistrate's determination, not that of the superior court. (*People v. Turner* (2017) 13 Cal.App.5th 397, 404.)  In effect, we disregard the superior court's ruling on the section 995 motion.  (*People v. Hall* (2020) 57 Cal.App.5th 946, 951.)

In reviewing a ruling on a motion to suppress, " '[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

## B. Reasonableness of Search

Prince does not dispute that his OR release included a warrantless search condition nor that Officer Coss knew about the condition before conducting the search. He argues the search was unlawful because the People did not prove that the *scope* of the search condition extended to his residence. We agree.

Prince relies on *Romeo*, *supra*, 240 Cal.App.4th 931. There, police officers conducted a warrantless search of the residence, including the attached garage, of two probationers whom the officers knew were on probation with a search clause. (*Id.* at pp. 936, 937.) Division Four of this court considered whether the prosecution had presented evidence of the scope of the probation clause to justify the warrantless search, and it concluded the prosecution had failed to do so. (*Id.* at pp. 939, 954.) The court explained that " 'a search pursuant to a probation search clause may not exceed the scope of the particular clause relied upon.' " (*Id.* at p. 954, italics omitted.) Because probation search terms vary in scope, the court reasoned, "mere knowledge that someone is on probation and subject to search, without more, may be insufficient where there is a challenge to the search." (*Id.* at pp. 951–952.)

The *Romeo* court could not uphold the search "without any showing that the searching officers knew that the target of their search, the residence itself, fell within the scope of a probation search clause." (*Romeo*, *supra*, 240

Cal.App.4th at p. 954.) The prosecution was "required to present evidence demonstrating the objective reasonableness of a warrantless search." (*Id*. at p. 955.) The court explained, "[T]here is nothing in the record to aid an objective evaluation of the scope of advance consent that was given. We do not know whether the authorized scope of search extended just to the persons of [the probationers], or to all property under their control as well; and if it did extend to their property, we do not know whether it extended specifically to their residence. Nor do we know whether a search was authorized for any particular kind of contraband." (*Id*. at pp. 950–951.) Therefore, "it [was] impossible to tell what limits may have been imposed on any probation search of [the probationers]." (*Id*. at p. 951.) Accordingly, the court concluded it could not uphold the search. (*Id*. at p. 954.)

*Romeo* is instructive. Similarly here, we cannot determine whether Officer Coss's subjective belief that Prince had consented to a search of his residence when he was granted OR release was objectively reasonable. The People did not present "a search clause expressly allowing a *residential* search." (*Romeo, supra*, 240 Cal.App.4th at p. 955, italics added.) Nor did Officer Coss provide "detailed testimony . . . showing some understanding of the operative terms of [release] and connecting those terms to the need for a warrantless search." (*Ibid*.) He merely testified that he knew Prince's release included a warrantless search condition. Because search conditions may vary (see *Romeo*, at p. 951; § 1203.1), knowledge of a warrantless search condition, without more, is insufficient. "Even without [an explicit residential search clause or detailed officer testimony], the search might still have been justified if the objective circumstances otherwise warranted it." (*Romeo*, at p. 955.) "But we find no such justification on this record." (*Ibid*.)

7

The People wholly fail to address *Romeo*, *supra*, 240 Cal.App.4th 931. Instead, they rely on assumptions and inferences unsupported by the record. The People assert that "the standard search conditions when a defendant is released on bail or own recognizance include warrantless search of the person and the residence," but they failed to provide the magistrate with any evidence demonstrating this. They did not prove, nor attempt to prove, that it is city and county practice for judges to impose the same standard search conditions when they grant OR release. (See *id.* at p. 951 ["[s]ome judges have 'standard' probation terms for particular crimes and particular circumstances (and if so, those terms may be subject to proof by judicial notice, which was not sought here)"].) Officer Coss provided no testimony regarding his understanding of the standard conditions of OR release. Accordingly, we reject the People's contention that "one can *infer* from the state of the evidence" that the OR search condition included Prince's residence. (Italics added.) They assert that Officer Coss "made the reasonable *assumption*" that the search condition included Prince's residence. (Italics added.) We have no doubt that Officer Coss subjectively understood that the scope of the search condition permitted him to search Prince's residence. But the issue is whether this was objectively reasonable, and the People failed to demonstrate it was.

In sum, we conclude the People failed to produce proof sufficient to demonstrate that the search fell within the consent exception to the warrant requirement. Specifically, they failed to prove that the scope of the search condition included Prince's residence. Accordingly, the search was unreasonable.

8

### C. Good Faith Exception

The People contend that the good faith exception to the exclusionary rule applies. Prince argues it does not, and we agree.

"Where a search is found to be invalid, 'a Fourth Amendment violation is shown and the question . . . becomes whether such constitutional violation is appropriately remedied by the application of the judicially created exclusionary rule which prohibits the admission at trial of the evidence obtained during the unlawful search.' (*People v. Downing* (1995) 33 Cal.App.4th 1641, 1650–1651 . . ., citing *United States v. Leon* (1984) 468 U.S. 897, 906 [82 L.Ed.2d 677] . . . .) Exclusion of the evidence is compelled 'only where it " 'result[s] in appreciable deterrence.' " ' (*Herring v. United States* (2009) 555 U.S. 135, 141 [172 L.Ed.2d 496] . . . .) The Supreme Court has recognized that 'exclusion "has always been our last resort, not our first impulse," [citation] and our precedents establish important principles that constrain application of the exclusionary rule.' " (*People v. Pritchett* (2024) 102 Cal.App.5th 355, 360–361 (*Pritchett*).)

" 'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.' [Citation.] '[W]hen police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not "pay its way." [Citation.] In such a case, the criminal should not "go free because the constable has blundered." ' " (*Pritchett, supra*, 102 Cal.App.5th at p. 361.)

"The Supreme Court has clarified that, in applying the good faith exception, '[t]he pertinent analysis of deterrence and culpability is objective, not an "inquiry into the subjective awareness of arresting officers." ' (*Herring, supra,* 555 U.S. at p. 145.) The ' "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." ' " (*Pritchett, supra,* 102 Cal.App.5th at p. 361.) "[T]he government has the burden to prove facts warranting application of the good faith exception." (*People v. Willis* (2002) 28 Cal.4th 22, 37.)

For substantially the same reasons that we conclude the search was unreasonable, we also conclude that the good faith exception is inapplicable. A reasonable police officer would not be able to determine from the available evidence—the minute order and the information provided by the prosecutor—whether the search condition was broad enough to justify a search of Prince's residence. (See *People v. Douglas* (2015) 240 Cal.App.4th 855, 863 [because "probation search clauses are not worded uniformly" the officer must have knowledge "of the existence of a search clause broad enough to justify the search at issue"].) Here, suppression of the search evidence furthers the purpose of deterrence. The People argue that Officer Coss, in determining there was a warrantless search condition, "merely fail[ed] to confirm his assumption that the terms of release included standard warrantless search of the residence." Were we to agree with them, application of the exclusionary rule would be precluded in any instance where an officer knew there was a probation or presentence release warrantless search condition, without more, and the officer assumed the breadth of its scope without obtaining further information. This method is not prudent and defies the principles governing probation and presentence release. "[P]robation search clauses are not

worded uniformly" and courts "attempt to individualize the terms and conditions of probation to fit the offender."  (*Romeo, supra*, 240 Cal.App.4th at p. 951.)

In sum, we conclude the good faith exception to the exclusionary rule does not apply.

## III.  DISPOSITION

The judgment is reversed.  The matter is remanded with directions to the trial court to vacate the order denying Prince's motion to suppress and enter a new order granting the motion, and to permit Prince to withdraw his guilty plea.

_____

Langhorne Wilson, J.

WE CONCUR:


_____

Banke, Acting P. J.


_____

Smiley, J.


A170549/*People v. Prince*

12
