**The STATE of Texas, Appellant,**

v.

**Haydee MAYORGA, Appellee.**

No. 05–93–00704–CR.

Court of Appeals of Texas,
Dallas.

Nov. 8, 1996.

J. Craig Jett, Dallas, for Appellee.

Sharon F. Batjer, Assistant District Attorney, Dallas, for Appellant.

Before MORRIS, JAMES and HANKINSON, JJ.

## OPINION ON REMAND

MORRIS, Justice.

This is an opinion on remand from the Texas Court of Criminal Appeals. The State appealed the trial court's decision to suppress evidence that showed appellee resisted arrest. The trial court suppressed the evidence on the ground that it was "fruit of the poisonous tree" because no arrest warrant existed. We reversed the trial court's decision in *State v. Mayorga,* 876 S.W.2d 176 (Tex.App.—Dallas 1994), *aff'd and remanded,* 901 S.W.2d 943 (Tex.Crim.App.1995). In that opinion, we concluded that evidence of appellee resisting an unlawful arrest should not have been suppressed under either the federal exclusionary rule or article 38.23 of the Texas Code of Criminal Procedure because the evidence was not obtained through exploitation of the illegal arrest. *See* TEX. CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1996). Appellee petitioned the court of criminal appeals to determine whether we improperly created an exception to article

38.23. The court of criminal appeals affirmed the case and agreed that neither article 38.23 nor the federal exclusionary rule was applicable to the case. It remanded the case, however, for our further consideration in light of *Arizona v. Evans,* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); *Barnett v. State,* 615 S.W.2d 220 (Tex.Crim.App.), *appeal dism'd,* 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981); and *Ford v. State,* 538 S.W.2d 633 (Tex.Crim.App.1976).

In the initial submission of this case, we assumed, as did the parties, that the police arrested appellee unlawfully. *Mayorga,* 876 S.W.2d at 177. We recognized that the federal and state exclusionary rules both serve to inhibit police misconduct by precluding the use against an accused of any evidence gained by exploitation of an illegal arrest. *Id.* at 178. We concluded that neither the federal exclusionary rule nor article 38.23 prevented the State from introducing evidence that appellee resisted arrest because nothing in the record indicated that the police contrived the illegal arrest or otherwise induced appellee to resist. *Id.* We determined that the evidence of appellee's resistance was not obtained through illegal police exploitation, and its suppression would not advance the exclusionary rules' purpose. *Id.* Accordingly, we reversed the trial court's suppression order. *Id.*

Since our first opinion in *Mayorga,* the United States Supreme Court has established a categorical exception to the federal exclusionary rule when erroneous information leading to an unlawful arrest results from clerical error by court employees. *See Evans,* 514 U.S. at ——, 115 S.Ct. at 1185. Evans was arrested during a routine traffic stop when a police computer indicated there was a warrant for his arrest. *Id.* at ——, 115 S.Ct. at 1188. The police found marijuana in Evans's car and charged him with possession of an illegal substance. *Id.* It was later discovered that the warrant had been quashed before Evans was arrested but, due to clerical error by a court clerk, the information on the police computer was not updated. *Id.* Evans moved to suppress the evidence of the marijuana as the fruit of an unlawful arrest. *Id.* The Supreme Court

presumed, as did the parties, that the police violated the Fourth Amendment when they arrested Evans. *Id.* at ——— n. 1, 115 S.Ct. at 1189 n. 1. It held, however, that the federal exclusionary rule is not a suitable remedy for every Fourth Amendment violation. *See id.* at ———, 115 S.Ct. at 1191.

Using the analysis set out in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court reasoned that the federal exclusionary rule was historically designed to deter police misconduct, not mistakes by court employees, and that court employees are not inclined to subvert the Fourth Amendment.[1] *Evans,* ——— U.S. at ———, 115 S.Ct. at 1191. Finally, and most importantly, the Court concluded that the application of the federal exclusionary rule would have no significant effect on court employees who are responsible for telling the police department that a warrant has been quashed. *Id.* The Court recognized that court clerks "are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime" and do not have a stake in the outcome of criminal prosecutions. *Id.* at ———, 115 S.Ct. at 1193. The Court noted that the arresting officer acted in an objectively reasonable way when he relied upon the police computer record and, in fact, would have been derelict in his duty if he had not arrested Evans. *See id.* at ———, 115 S.Ct. at 1193–94. Concluding that the remedial objective of deterring police misconduct would not be served by the suppression of the evidence, the Court created a categorical exception to the federal exclusionary rule for clerical errors of court employees. *Id.* at ———, 115 S.Ct. at 1194.

In the instant case, the arresting police officer testified that he radioed the police dispatcher and gave appellee's name and date of birth. The police dispatcher responded that there were outstanding warrants. The officer arrested appellee based on this information. The arresting officer testified that he followed routine police department procedure for confirming the warrants by radio. When the officer took appellee to jail, however, he discovered the warrants were actually in the name of Imelda Mayorga, not Haydee Mayorga, and that the driver's license number differed by one digit.

Like the police officer in *Evans,* the officer in this case was acting in an objectively reasonable manner when he relied on the information from the police dispatcher that a warrant existed for appellee's arrest. Similarly, the officer in this case was bound to arrest and would have been derelict in his duty if he failed to arrest appellee after receiving the dispatcher's message. But, unlike *Evans,* the error in this case was made by a police employee, not a court clerk.

The categorical exception to the exclusionary rule in *Evans* is limited to "clerical errors of court employees." *Id.* at ———, 115 S.Ct. at 1194. The Supreme Court explicitly declined to address whether the *Leon* analysis is the proper analysis to apply in a situation where *police personnel* are responsible for the error leading to an unlawful arrest. *Id.* at ——— n. 5, 115 S. Ct. at 1194 n. 5. Having been directed by the court of criminal appeals to discuss the case on remand in light of *Evans,* we are now faced with the question that the Supreme Court declined to address.

We conclude the application of the *Leon* analytical framework does not support a categorical exception to the federal exclusionary rule for mistakes made by police dispatchers. Unlike court clerks or judges, police dispatchers are in continuous radio contact with the officers on duty. They are adjuncts to the law enforcement team with a stake in the outcome of criminal prosecutions. They directly provide the warrant information upon which an officer in the field depends to make an arrest; their misconduct or carelessness can be significantly affected by the threat of exclusion. Because we recognize the exclusionary rule as an important tool to help prevent impingement on Fourth Amendment rights, we decline to create another exception

---

1. *Leon* established the "good-faith exception" to the federal exclusionary rule for judicial misconduct when police officers act in objectively reasonable reliance on a search warrant, issued by a neutral and detached magistrate, that is later determined to be invalid. *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420–21.

to the rule for errors caused by police personnel.

Our conclusion that *Leon* and, consequently, *Evans* do not support another categorical exception to the federal exclusionary rule for mistakes made by police dispatchers does not change the outcome of this appeal.[2] Any exception to the federal exclusionary rule that permits the admission of evidence in the face of a Fourth Amendment violation presupposes that the evidence is actually within the scope of exclusion. As we previously held in our first opinion, the evidence appellee sought to exclude was outside the scope of the exclusionary rule. *Mayorga*, 876 S.W.2d at 178. Not all evidence is subject to exclusion solely because it would not have been obtained *but for* the unlawful arrest. The question is

> whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Thus, if the evidence is not acquired by exploitation of the illegal arrest, the exclusionary rule does not apply. And if the exclusionary rule does not apply, any exception to it does not apply. As we noted in our first opinion, evidence that a person resisted arrest is normally outside the field of exploitation because the arresting officer cannot foresee whether the person he sets out to arrest will resist. Consequently, appellee cannot rely here on the federal exclusionary rule to suppress evidence that she resisted arrest because the evidence is not within the scope of exclusion. *See Mayorga*, 876

S.W.2d at 178. Because the exclusionary rule is not applicable, the *Evans* exception cannot be applicable. Thus, the *Evans* exception, to the extent it might arguably be extended to police personnel, does not alter our analysis under the federal exclusionary rule.

We next revisit our analysis under article 38.23 in light of *Ford*, 538 S.W.2d at 635, and *Barnett*, 615 S.W.2d at 223.

Article 38.23 provides that no evidence "obtained ... in violation of ... the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America" is admissible in trial against the accused. TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1996). On discretionary review, the court of criminal appeals agreed that the evidence of appellee's resisting arrest was not "obtained" in violation of the law as prohibited by article 38.23 because article 38.23 contemplates the illegal procurement of *existing* evidence of a previously committed crime. *See Mayorga*, 901 S.W.2d at 945–46. Thus, our decision to reverse the trial court did not create a new exception to article 38.23. We simply held article 38.23 to be inapplicable.[3]

The court of criminal appeals remanded the case, however, for consideration of our holding in light of *Ford* and *Barnett*. As the court of criminal appeals noted, the parties cited these cases in their briefs. *Mayorga*, 901 S.W.2d at 945. Although we did not discuss these two cases in our first opinion, they were considered. We concluded neither was dispositive of any issue in the appeal. For the following reasons, we adhere to that initial conclusion.

In *Ford*, the court of criminal appeals discussed the constitutionality of section

**2.** Indeed, our opinion on remand *cannot* change the outcome of this appeal: The court of criminal appeals has already affirmed our decision that the trial court erred. *Mayorga*, 901 S.W.2d at 946.

**3.** Our conclusion that article 38.23 is not applicable is also supported by the court of criminal appeals' subsequent discussion of the attenuation doctrine in *State v. Daugherty*, 931 S.W.2d 268, 270–71 (Tex.Crim.App.1996). The court explains in *Daugherty* that the attenuation doctrine is not an exception to article 38.23. Rather, it accommodates the statute's rejection of a strict "but

for" test for causation. Specifically, the court held that the statute excludes evidence "obtained" in violation of the law, and "obtain" means to gain or attain by planned action or effort. *Id.* Thus, evidence too attenuated or remote from the initial illegality has not been "obtained" in violation of the law and is not excluded by the rule. Likewise, although evidence of appellant's resisting arrest would not exist "but for" the officer's attempt to arrest her, the evidence was not "obtained" in violation of the law in the sense that the arresting officer planned to attain it. Thus, article 38.23 does not operate to exclude the evidence.

38.03(b) of the Texas Penal Code. TEX.PE-NAL CODE ANN. § 38.03(b) (Vernon 1994). Under section 38.03(b), illegality of the arrest is not a defense to prosecution for resisting arrest. In its discussion of whether section 38.03(b) interferes with due process of law and the guarantee against unreasonable searches and seizures under the Texas and United States Constitutions, *Ford* concluded that section 38.03(b) was a valid exercise of police power. *Ford,* 538 S.W.2d at 635. It reasoned that, although the person arrested lost his right to use the illegal arrest as a defense, he retained remedies such as the right to bond, to appointed counsel, to prompt arraignment and determination of probable cause, and to the exclusionary rule, in addition to civil remedies against the offending police officer. *Id.* Similarly, the opinion in *Barnett* adhered to the holding in *Ford* and rejected a Fourth Amendment challenge to section 38.03(b). *Barnett,* 615 S.W.2d at 223.

Neither *Ford* nor *Barnett* affects our analysis of appellee's claim under state law. Appellee retains the suppression remedy of the exclusionary rule under *Ford* and *Barnett* if she can show she is entitled to it. For example, even though the illegality of an arrest is not a defense to the offense of resisting arrest, if an arresting officer exploits an illegal arrest by impermissibly interrogating the accused or improperly obtaining a consent to search, the accused may be entitled to suppression of her subsequent oral statement or evidence found pursuant to the consent to search. An accused also may be entitled to suppression of the evidence of her resisting arrest if she can show the evidence was obtained by exploitation of the initial illegal arrest; that is, for example, if she can show the officer used an illegal arrest to provoke her to resist. Thus, our decision to reverse the trial court in this case does not offend the holdings of *Ford* or *Barnett.* Appellee retains all the remedies noted in *Ford,* including the suppression remedy. She simply has not shown under the facts presented that she is entitled to it.

Accordingly, we conclude our previous analysis in *Mayorga,* that the evidence appellee sought to suppress is outside the field of exploitation and thus not subject to exclusion,

need not be altered in light of either *Evans, Ford,* or *Barnett.* The *Evans* opinion presupposes that the illegal substance was within the field of exploitable and, therefore, excludable evidence. Because we conclude that the evidence in this case is not within the scope of excludable evidence, the categorical exception to the exclusionary rule created in *Evans* is unnecessary to the disposition of this appeal. Moreover, the *Evans* exception applies only to clerical errors by court employees and is factually distinguishable from this case. Again, we decline to extend the *Evans* exception to errors committed by police personnel.

Unquestionably, *Ford* and *Barnett* stand for the general principle that the exclusionary rule remains a viable remedy for persons who are unlawfully arrested. Neither case, however, mandates that all evidence that police gather after effecting an illegal arrest must be suppressed. To invoke the suppression remedy, appellee must show she is entitled to it. She has not shown that she is entitled to suppression of the evidence of her resisting arrest.

Consequently, the analysis in our original opinion remains unchanged. We remand the case to the trial court for further proceedings.