[No. A097724. First Dist., Div. Three. May 26, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY LEE HILL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts II and III are not certified for publication.

---

**COUNSEL**

Gail Harper, under appointment by the Court of Appeal, for Defendant and and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Eric D. Share and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CORRIGAN, Acting P. J.**—Defendant appeals following a conviction for receiving stolen property. He contends, among other things, that the search of his motel room was unlawful because the police were unaware of his probation search condition. After we affirmed this conviction (*People v. Hill* (Mar. 28, 2003, A097724) [nonpub. opn.]), the California Supreme Court granted review and held the matter pending its decision in *People v. Sanders* (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630, 73 P.3d 496] (*Sanders*). The Supreme Court then transferred the case back to us with directions to vacate our decision and reconsider the cause in light of *Sanders*. We again conclude the search was lawful and affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Following a plea agreement, defendant's girlfriend Jamie Gregory testified that on March 17, 2001, defendant asked her to help him burglarize the home of her friend Patricia Bond. When Gregory refused, defendant struck her in the face with an auto part, breaking her nose. Defendant took her to the emergency room, where Gregory told the triage nurse that she was struck with a metal baseball bat while trying to break up a fight.

The next morning, defendant told Gregory he would kill her if she did not help with the burglary. Gregory called Bond between 8:30 and 9:00 a.m. to determine if she was home. Gregory appeared surprised that Bond had not yet left for church. Bond was suspicious because Gregory was living in a car and had recently asked Bond for money. Bond left home, locking the doors. While Bond was gone, Gregory entered the house through a rear window and admitted defendant through a sliding glass door. They took jewelry, coins, a DVD player, VCR, tools and other items. After defendant sold some of Bond's property, he and Gregory checked into a motel.

Discovering the burglary upon her return, Bond called the police and Officer Moore responded. Based on Bond's report, Moore considered Gregory a suspect and went to the motel parking lot where Gregory's car had been located. Gregory walked toward the car and Moore approached, saying he was investigating a burglary. Gregory said she was with defendant, who was inside the room taking a shower. Although Moore noted facial injuries and several lacerations on Gregory's nose, Gregory did not appear to be afraid of defendant. Gregory reentered the motel room, and spoke with defendant near the bathroom door. Moore later searched the room and recovered some of Bond's jewelry and silver dollars hidden under the bathroom sink and behind the toilet. He found other stolen property in dresser

drawers. Moore did not recover Bond's DVD player or VCR, which defendant had already sold. After his arrest, defendant said he could not be charged with a burglary, claiming he did not enter the house. He also asked, "If I help you get the other property back, can we work some kind of deal to help [Gregory] out?" He said, "[I]f I could get some kind of guarantee for her . . . I could help you guys out and get the rest of that property back." Defendant's niece and a friend testified that Gregory injured her face when she fell on an auto part while defendant was fixing her car. Another friend testified that Gregory approached her several weeks before the burglary and tried to sell her a ring, contradicting Gregory's testimony that she was not selling jewelry at that time.

The jury convicted defendant of receiving stolen property, but found him not guilty of burglary. The court found the defendant's prior conviction had not been proven. Defendant was sentenced to three years in prison.

## DISCUSSION

### I. *Motion to Suppress*

The trial court denied defendant's motion to suppress his statements to Officer Moore and the evidence seized in the motel room. Applying *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519], the court found that because defendant was on probation he had no reasonable expectation of privacy. Defendant claims the trial court erred because Moore had been erroneously informed that defendant was on parole, and did not learn that defendant was on probation with a search condition until after the search had taken place.[1] In supplemental briefing, defendant argues that the Supreme Court's decision in *Sanders, supra,* 31 Cal.4th 318, "establishes once and for all that the search may not be validated as a probation search after the fact." *Sanders* is distinguishable.

### A. *Additional Factual Background*

At the suppression hearing, Moore testified that Bond identified both Gregory and "her boyfriend" as possible suspects. Later that morning, Moore contacted Gregory at the motel where her car had been discovered. Gregory, who was standing outside the door of her motel room, admitted she was staying at the motel with her boyfriend. Gregory refused Moore's request to search the room. As Gregory walked back inside, Moore saw defendant in the

---

[1] The terms of defendant's probation search condition are not described in the record. Defendant stipulated that he was on probation at the time of the search and does not dispute that he was subject to a condition allowing law enforcement officers to search his residence.

room and asked Gregory if he could speak with defendant. Through a crack in the door, Moore watched as Gregory stood at the bathroom door and whispered to defendant. Defendant came outside and confirmed that he was Gregory's boyfriend. Moore could not recall if he asked defendant for permission to search.

Moore radioed the police dispatcher and asked whether Gregory or defendant was on probation. The dispatcher erroneously told him no. Defendant was, in fact, on probation. Moore began the process of obtaining a search warrant by calling his patrol supervisor who came to the scene and in turn called a sergeant of investigations.[2] The sergeant then called a detective to actually write the search warrant. While awaiting the detective's arrival, Moore received another call from the dispatcher who again erroneously advised him that defendant was on parole. Moore testified that dispatchers previously relied on a computer-generated printout that listed only the names of active parolees. At some point, the printout was changed to include both active and inactive parolees, with a letter code distinguishing them. Apparently, the dispatcher misread the printout. Relying on this misreport of defendant's active parole status, Moore searched the motel room and found the victim's property. About two days later, Moore learned that defendant's parole had expired, but that defendant was, indeed, on probation with a search condition.

## B. *Analysis*

In our original opinion, we relied on the reasoning of *In re Tyrell J., supra*, 8 Cal.4th 68 (*Tyrell J.*), andconcluded the search was lawful because defendant was a probationer subject to a police search condition, even though Officer Moore was unaware of defendant's probationary status at the time of the search. The *Sanders* court, however, declined to apply the reasoning of *Tyrell J.* to residential searches involving adult parolees. The court expressly rejected the notion that it is irrelevant whether police have contemporaneous awareness of a search condition. (*Sanders, supra*, 31 Cal.4th at p. 322.)

In *Sanders*, police officers discovered cocaine during an unlawful protective sweep of a residence shared by two defendants. (*Sanders, supra*, 31 Cal.4th at pp. 322–323.) Subsequently, an officer contacted the police department and learned that one of the defendants, McDaniel, was on parole with a search condition. The officer then conducted a parole search of the residence and seized the cocaine. (*Id.* at p. 323.) The Supreme Court concluded the

[2] Moore's disjointed direct examination makes it difficult to determine the precise sequence of events. Defendant's appellate counsel recites that Moore inquired about the probation status *after* he initiated the warrant process. This discrepancy is of no consequence. In this case it is the officer's conduct, not the sequence, that is dispositive.

search was unlawful as to defendant Sanders, who was not subject to a search condition. It then turned to the "more difficult question" of whether the search was also unlawful as to McDaniel. (*Id.* at p. 331.) The court considered the totality of the circumstances, "with two salient circumstances being McDaniel's parole search condition and the officer's lack of knowledge of that condition." (*Id.* at p. 333.)

The court emphasized that while a parolee's expectation of privacy is diminished, it is not eliminated. (*Sanders, supra*, 31 Cal.4th at p. 332.) Relying on its analysis in *People v. Reyes* (1998) 19 Cal.4th 743, 754 [80 Cal.Rptr.2d 734, 968 P.2d 445], the court observed, "[W]hether the parolee has a reasonable expectation of privacy is inextricably linked to whether the search was reasonable. A law enforcement officer who is aware that a suspect is on parole and subject to a search condition may act reasonably in conducting a parole search even in the absence of a particularized suspicion of criminal activity, and such a search does not violate any expectation of privacy of the parolee." (*Sanders, supra*, at p. 333.) The court cautioned, "But our reasoning in *Reyes* does not apply if the officer is unaware that the suspect is on parole and subject to a search condition. Despite the parolee's diminished expectation of privacy, such a search cannot be justified as a parole search, because the officer is not acting pursuant to the conditions of parole." (*Ibid.*) The court concluded, "[W]e hold that an otherwise unlawful search of the residence of an adult parolee may not be justified by the circumstance that the suspect was subject to a search condition of which the law enforcement officers were unaware when the search was conducted." (*Id.* at p. 335, 80 Cal.Rptr.2d 734, 968 P2d 445, fn. omitted.)

The *Sanders* court rested its analysis on the deterrent effect of the exclusionary rule. Its conclusion "flows from the rule that whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted and is consistent with the primary purpose of the exclusionary rule—to deter police misconduct." (*Sanders, supra*, 31 Cal.4th at p. 332.) The court also observed that the exclusionary rule serves to preserve judicial integrity. Quoting *Terry v. Ohio* (1968) 392 U.S. 1, 12 [20 L.Ed.2d 889, 88 S.Ct. 1868], the *Sanders* court stressed, " 'Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions.' " (*Sanders, supra*, at p. 334.)

Finally, the *Sanders* court also noted that suppressing the evidence in these circumstances protects the rights of the parolee's inhabitants and guests. (*Sanders, supra*, 31 Cal.4th at p. 335.) "Permitting evidence that has been suppressed as to a cohabitant to be used against the parolee would encourage

searches that violate the rights of cohabitants and guests by rewarding police for conducting an unlawful search of a residence." (*Ibid.*)

At the outset, the Attorney General contends that *Sanders* does not apply because defendant here was on probation, not parole. Relying on *People v. Bravo* (1987) 43 Cal.3d 600, 608 [238 Cal.Rptr. 282, 738 P.2d 336], the Attorney General argues that a probationer consents to warrantless searches and seizures in exchange for the opportunity to avoid prison. As the *Bravo* court held, the acceptance of a probation search condition constitutes "a complete waiver of [the] probationer's Fourth Amendment rights." (*Id.* at p. 607.) By contrast, no waiver theory was applicable in *Sanders* because the search condition was imposed as a condition of parole, which the parolee could not refuse. (*Sanders, supra,* 31 Cal.4th at p. 329, fn. 3.) We need not resolve this issue, however, because we conclude that *Sanders* is distinguishable on other grounds.

In examining the "totality of the circumstances," the *Sanders* court identified the "salient circumstances" before it to be McDaniel's parole search condition and the officer's ignorance of that condition. (*Sanders, supra,* 31 Cal.4th at p. 333.) By contrast, the "salient circumstances" here are more complex. Moore's conduct was not that of an officer unlawfully invading a residence, and then seeking to justify his conduct by a belatedly discovered search condition. Moore took all the proper steps to ensure that his search of the motel room was lawful. He first asked for consent. When refused, Moore contacted the dispatcher to determine if defendant or Gregory was on probation. Defendant was indeed on probation, but, for unexplained reasons, the dispatcher reported to the contrary. Moore then dutifully began the process of securing a search warrant. As he waited for the warrant to be prepared and approved, the dispatcher contacted Moore with more misinformation. This time the dispatcher erroneously informed him that defendant was on parole. Only then did Moore enter and search the room.

We are mindful that erroneous parole status information will not validate an otherwise unlawful search. "[T]he good faith exception does not apply where law enforcement is collectively at fault for an inaccurate record that results in an unconstitutional search." (*People v. Willis* (2002) 28 Cal.4th 22, 49 [120 Cal.Rptr.2d 105, 46 P.3d 898].) The *Willis* court noted that its "collective knowledge principle" is consistent with other high courts' decisions and specifically quoted *State v. Mayorga* (Tex.App. 1996) 938 S.W.2d 81, 83 (*Mayorga*), which stated, concerning incorrect information provided by a dispatcher: "[P]olice dispatchers are in continuous radio contact with the officers on duty. They are adjuncts to the law enforcement team with a stake in the outcome of criminal prosecution. They directly provide the warrant information upon which an officer in the field depends to make an arrest; their misconduct or

carelessness can be significantly affected by the threat of exclusion. Because we recognize the exclusionary rule as an important tool to help prevent impingement on Fourth Amendment rights, we decline to create another exception to the rule for errors caused by police personnel." (*Mayorga, supra*, at pp. 83–84.)

Under the "collective knowledge principle" discussed in *Willis*, the evidence would have been excluded if defendant's erroneously reported parole status had been the only basis for the search. In examining the totality of the circumstances, however, we cannot turn a blind eye to the undisputed fact that defendant was actually on probation and consented to a search condition. But for the dispatcher's misinformation to the contrary, Moore would have searched defendant's motel room on the basis of that valid search condition.

■ While *Sanders* precludes an officer from justifying a search by later-acquired knowledge of the suspect's parole status, the circumstances of defendant's search represent a variation on that theme. For example, if the dispatcher had misspoken at the outset, incorrectly stating that defendant was on parole when in fact he was on probation, suppression of the evidence would serve no deterrent purpose. In such a situation, the dispatcher's error would produce no "impingement on Fourth Amendment rights." (*Mayorga, supra*, 938 S.W.2d at p. 83.) Nor would " 'judicial integrity' " be impugned in upholding the search. (See *Sanders, supra*, 31 Cal.4th at p. 334.) While the exclusionary rule exists to safeguard Fourth Amendment rights, it should not devolve into a game, the outcome of which depends on a terminological discrepancy.

■ Here, the officer believed he was conducting a parole search when in fact defendant was on probation and had waived his Fourth Amendment privacy rights, except for freedom from arbitrary or harassing searches. Applying the same "totality of the circumstances" test employed by the *Sanders* court, we cannot conclude that the exclusionary rule dictates suppression of the evidence. The exclusionary rule serves " 'to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' " (*Mapp v. Ohio* (1961) 367 U.S. 643, 656 [6 L.Ed.2d 1081, 81 S.Ct. 1684].) Nothing in this officer's conduct manifests any such disregard. Moore's actions do not present us with the danger of "legitimiz[ing] unlawful police misconduct." (*Sanders, supra*, 31 Cal.4th at p. 335.) To punish the responsible officer and the inept dispatcher in these circumstances creates a windfall for the defendant who was legitimately subject to a search condition. Therefore, after considering *Sanders*, we again conclude the trial court did not err in denying defendant's motion to suppress.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Parrilli, J., and Pollak, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 25, 2004.

---

*See footnote, *ante*, page 1344.