Filed 2/23/21  P. v. Alonso CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OMAR RODRIGUEZ ALONSO,<br><br>    Defendant and Appellant. | B300797<br><br>(Los Angeles County<br>Super. Ct. No.BA471389) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Enrique Monguia, Judge.  Affirmed as modified.

Daniel Milchiker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

Police officers recovered numerous bindles of cocaine base and several hundred dollars in cash during a search of appellant Omar Rodriguez Alonso, who was on postrelease community supervision (PRCS) at the time. Appellant moved to suppress the items as the fruits of a warrantless search. The magistrate denied the motion, and the trial court later denied appellant's renewed motion to suppress. At trial, the court instructed the jury that the reasons for the search had been settled and resolved, and were not to be considered for any purpose. The jury found appellant guilty of possessing cocaine base with intent to sell.

Appellant now contends the trial court erred in denying his motions to suppress. argues that the prosecution failed to provide the court with sufficient evidence of the search conditions to which he was subject and the arresting officer's awareness of them. Respondent Attorney General responds that appellant forfeited these arguments by failing to raise them in connection with his first motion to suppress. We agree. We further agree with respondent that the trial court properly would have denied the motions even if these arguments had been timely made.

Appellant also challenges the jury instruction regarding the search, which he argues impermissibly directed a guilty verdict and deprived him of the ability to present a defense. We reject these contentions. Appellant helped craft the instruction and did not object to it below. His arguments concerning the instruction accordingly are barred by the doctrine of invited error.

Appellant requests that we review the sealed record of the *Pitchess*[1] hearing to determine whether police personnel records were improperly withheld from discovery. Respondent does not

---

[1]*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

oppose this request, which we grant.  We find no abuse of the trial court's discretion.  We likewise find no error in the trial court's failure to hold an ability to pay hearing before imposing fines and fees.  Appellant failed to raise the issue or object to the fines and fees at sentencing and therefore forfeited the claim.

We agree with appellant and respondent that the one-year prison prior enhancements must be stricken from appellant's sentence.  Because the court imposed the maximum sentence, we need not and do not remand for resentencing.  Instead, we strike the enhancements and affirm the judgment as modified.  Respondent's motion to augment the record is granted.

## PROCEDURAL HISTORY

An amended information charged appellant with one count of possessing cocaine base for sale (Health & Saf. Code, § 11351.5).  The amended information further alleged that appellant suffered a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(j), 1170.12)[2] and served two previous prison terms (§ 667.5, subd. (b)).

A jury found appellant guilty as charged.  Appellant subsequently admitted the priors.  The trial court denied appellant's *Romero*[3] motion to strike his strike prior.  It sentenced appellant to the maximum sentence possible, a total of 10 years: the high term of four years, doubled to eight years due to the strike, plus two one-year terms for the prison priors.  The court also imposed a $400 restitution fine (§ 1202.4, subd. (b)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $40

---

[2]All further statutory references are to the Penal Code unless otherwise indicated.

[3]*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

3

court operations assessment (§ 1465.8, subd. (a)(1)), and a criminal laboratory analysis fee and associated penalty assessments totaling $205. (Health & Saf. Code, § 11372.5, subd. (a); § 1464, subd. (a)(1).) Appellant timely appealed.

## FACTUAL BACKGROUND

Los Angeles Police Department (LAPD) Officer Adolfo Pacheco testified that he worked in the department's narcotics unit. His job duties included looking for narcotics offenders, often on Skid Row, and monitoring individuals with previous narcotics convictions and those on probation.

On September 11, 2018, Pacheco was remotely monitoring a portion of Skid Row using a high-definition surveillance camera. He observed heavy pedestrian traffic coming and going from a particular tent. His training and experience led him to suspect that drugs were being bought and sold in the tent. Pacheco dispatched other officers to go to the scene while he remained at the surveillance post.

As Pacheco watched his fellow officers at the scene, he saw a person enter a tent with money and exit it with a clenched hand. She was detained and found to have off-white solids resembling cocaine base in her possession. Pacheco saw appellant subsequently exit the same tent, which he had not seen appellant enter. No one exited the tent after appellant. Appellant left the area and was not detained or searched.

Two days later, on September 13, 2018, Pacheco was on undercover patrol with his partner, LAPD officer Michael Mann, when he saw appellant near a tent in the same vicinity of Skid Row. Mann parked the officers' unmarked car and he and Pacheco approached the area on foot. Pacheco saw appellant

4

exiting a tent. As he stepped out of the tent, appellant placed his clenched right fist into the right front pocket of his shorts.

Pacheco detained appellant. Pacheco searched appellant's right front pocket and found 12 individually wrapped bindles containing off-white solids resembling cocaine base. Pacheco opined that each bindle would be worth $20 if it were cocaine. Pacheco recovered a similar bindle and a fifty dollar bill from appellant's left front pocket, and $300 in cash from appellant's right cargo pocket. In the black bag appellant was carrying, Pacheco found 21 individually wrapped off-white solids resembling cocaine base concealed inside a flashlight and $400 in cash. Other officers recovered approximately 144 uniform off-white rocks and a digital scale from the tent appellant was seen exiting. The rocks recovered from the tent were the same as those found in appellant's pockets and in the bag. An LAPD criminalist who tested some of the recovered rocks testified that they contained cocaine base.

No drug paraphernalia or empty baggies were found in appellant's possession, and he did not appear to be under the influence. Pacheco further testified that appellant did not display any signs of heavy cocaine use, such as burned lips or fingers or poor hygiene.

Based on his background, training, and experience, Pacheco opined that a hypothetical individual in the circumstances presented here possessed narcotics for the purpose of sales. Pacheco's opinion remained the same even when the hypothetical did not include bindles and a scale recovered from a tent.

Pacheco's partner, officer Mann, testified that he and Pacheco went to Skid Row in an unmarked vehicle on September 13, 2018. Mann detained a woman while Pacheco detained

5

appellant nearby. Mann and LAPD detective Jorge Trejo testified that they subsequently searched the tent that appellant exited. They recovered a black digital scale and also found four bindles of off-white solids concealed inside men's shoes. Mann testified that he did not find any drug paraphernalia or other indicia of drug use in the tent, which along with its clean condition suggested that the tent was being used to sell drugs. The tent did not contain any identification, but Mann believed that appellant "was in charge" of the tent.

**DISCUSSION**

## I.  Motions to Suppress

### A.  Background

Prior to the preliminary hearing, appellant filed a motion to suppress the items recovered during the September 13, 2018 search.[4] In his written motion, appellant asserted only that the search was conducted without a warrant. The prosecution filed an opposition in which it argued, in relevant part, that the search was valid because appellant "was on formal probation with search conditions" at the time.[5] The prosecution asserted that

---

[4]Respondent has filed an unopposed motion to augment the record on appeal with this motion and the prosecution's opposition thereto. We grant the motion.

[5]As we noted above and further discuss below, appellant was on PRCS at the time of the search. A person placed on PRCS after his or her release from prison is "subject to community supervision provided by the probation department of the county to which the person is being released." (§ 3451, subd. (a).) Additionally, "[t]he person, and his or her residence and possessions, shall be subject to search any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer." (§ 3453, subd. (f).)

6

Pacheco discovered appellant's status by "[u]sing department resources" prior to the search.

The magistrate heard the motion to suppress at the preliminary hearing, at which Pacheco was the sole witness. Pacheco testified that he was a narcotics officer with the LAPD whose duties including monitoring individuals who are "narcotic registrants"[6] or on probation for narcotics. Pacheco testified that he recognized appellant on the surveillance camera on September 11. He further stated that he "advised [his] partners of the - - Mr. Alon[s]o and his probation conditions" before they went to Skid Row." On September 13, Pacheco "advised my partners of my observations and advised him [*sic*] we were going to conduct a probation search." On that date, Pacheco "contacted" appellant on the street, detained him, and "conducted a probation search" during which he "recovered off-white solids from his pocket and his bag that he had around his shoulder." Pacheco also testified that he recovered "U.S. currency," and that his partners recovered solids and currency from a tent he saw appellant exit. On cross-examination, Pacheco stated he had not "personally" arrested appellant in the past, and that he "probably" recovered "the business card of Mr. Alon[s]o's probation officer from [appellant's] pocket" during the search.

---

[6]Former Health and Safety Code section 11590 required persons convicted of specified narcotics offenses to "register with the chief of police of the city in which he or she resides or the sheriff of the county if he or she resides in an unincorporated area." (Health & Saf. Code, § 11590, subd. (a).) Failure to register was a misdemeanor offense under former Health and Safety Code section 11594. The registration requirement was repealed January 1, 2020.

At the conclusion of the hearing, appellant's counsel argued in support of the motion to suppress. She stated: "[A]ll of this was based on a probation search and the officer testified that he recognized Mr. Alon[s]o on September 11th, even though he'd never arrested him before. So that just doesn't make any sense. He testified today that it's possible, and even likely, that he did recover Mr. Alon[s]o's probation officer's business card when he searched Mr. Alon[s]o. [¶] It doesn't make any sense that he would recognize a person that he'd never seen before and somehow know their name and be able to run their information and find out that they're on probation. Even if Mr. Alon[s]o is on probation, you know he's - - has a right to be free from arbitrary searches and from harassment. And in this case it doesn't seem credible that the officer knew that he was on probation before searching him."

The magistrate denied the motion immediately, without hearing oral argument from the prosecution.

Appellant, represented by different counsel in superior court, subsequently filed a renewed motion to suppress the items recovered during the search. In that motion, he again asserted only that the search was not supported by a warrant. The prosecution did not file a written opposition to the renewed motion.

At the hearing on the renewed motion, appellant's counsel argued the following: "[T]here is nothing in the preliminary hearing transcript that would, I guess, indicate that Mr. Alon[s]o is on probation with search conditions. [Pacheco] says that [appellant's] on probation, but there's nothing in the preliminary hearing transcript that specifically points to the fact that [appellant] actually has search conditions and what the limits or

8

what the specifics are with regard to the search conditions. …
They had no contact with Mr. Alonso two days prior, so the
question is how did they even link Mr. Alonso to probation.  They
didn't know his name.  They just saw an individual.  They didn't
know a date of birth.  There's nothing in the preliminary
transcript that . . . links the person that they saw to probation.
So those two things are missing from the preliminary hearing
transcripts, so I don't see how we get to the officers knowing that
Mr. Alonso was on probation with specific search conditions."

The court interjected, "Well, didn't the officer testify that
he recognized your client on the day of the arrest and he
recognized him, because he had seen him two days previously, so
he knew who he was."  The court also pointed out that Pacheco
testified that he advised his partners about the probation
conditions and that he performed a probation search.  It asked,
"Now, can I not infer from that that what he's referring to is a
search pursuant to a condition of probation that allows him to do
so; otherwise, what would he mean?"  Appellant's counsel
reiterated that there was "nothing that would specifically
indicate that the officer was aware of any of that at the time that
the search was done."  She further asserted, "based on the case
law, [the officer] needs to specifically know the search conditions
and what those search conditions are prior to conducting a
probation search; and there's nothing in the preliminary hearing
transcript that indicates, based on his testimony, that he was
aware that there were search conditions and what the search
conditions were."

The court responded, "So I guess his attorney at the
preliminary hearing really didn't make that argument, but
basically made the argument that there was no way this officer

9

knew about the condition." The court then heard from the prosecution, which argued that the preliminary hearing transcript "doesn't include any evidence whatsoever that impeached the officer's statements regarding why he conducted the search and his awareness of the defendant's search conditions."

The court then asked appellant's counsel about Pacheco's testimony regarding his duties monitoring individuals on probation. Appellant contended that Pacheco was "just speaking in general" and "he doesn't say that he knows that Mr. Alonso is on probation for narcotics or he's a narcotics registrant." Counsel asserted that the prosecution "could have asked" further questions at the preliminary hearing, and, by neglecting to do so, failed to carry its burden of demonstrating that the search was valid.

The court denied the motion based on "the totality" of the circumstances. It pointed to Pacheco's testimony "where he basically states that he knew the conditions," and said he was going to conduct a probation search. The court explained, "I would have to make the inference that there was a search condition. I mean, I don't know how else to interpret the evidence that is before me. . . . I think the magistrate properly found that the search was supported by the fact that your client had search conditions as part of his probation."

B.      **Standard of Review**

A criminal defendant whose motion to suppress is unsuccessful at the preliminary hearing "may raise the search and seizure matter before the superior court under the standard governing a section 995 motion." (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528-529 (*McDonald*); see also §§ 859c, 1538.5,

10

subd. (i).)  Under that standard, "the superior court's role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain the judgment." (*McDonald*, *supra*, 137 Cal.App.4th at p. 529.)  That is, the superior court "merely reviews the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts." (*Ibid.*)

On appeal from the denial of a renewed motion to suppress, we review the original determination made by the magistrate at the preliminary hearing.  (*McDonald*, *supra*, 137 Cal.App.4th at p. 529.)  We draw all presumptions in favor of the factual determinations of the magistrate, uphold the magistrate's express or implied findings if they are supported by substantial evidence, and measure the facts as found by the magistrate against the constitutional standard of reasonableness.  (*People v. Johnson* (2020) 50 Cal.App.5th 620, 626.)  Accordingly, we view the evidence and resolve any evidentiary conflicts in the light most favorable to the order denying the motion.  (*People v. Tully* (2012) 54 Cal.4th 952, 979.)  We are also bound to accept the trial court's credibility determinations.  (*Ibid.*)

"While we defer to the magistrate's factual findings if they are supported by substantial evidence, we exercise our independent judgment in determining the legality of the search on the facts so found." (*People v. Johnson*, *supra*, 50 Cal.App.5th at pp. 626-627.)  "Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court." (*People v. Tully*, *supra*, 54 Cal.4th at p. 979.)  We affirm the ruling if it is correct on any

11

theory of law applicable to the case, even if it was made for an incorrect reason.  (*McDonald*, *supra*, 137 Cal.App.4th at p. 529.)

### C.    Analysis

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures.  (U.S. Const., 4th Amend.)  Warrantless searches and seizures are per se unreasonable, "subject only to a few specifically and well-delineated exceptions."  (*Katz v. United States* (1967) 389 U.S. 347, 357.)  Among these exceptions are searches conducted pursuant to the terms of a subject's probation, parole, or PRCS, so long as they are not conducted arbitrarily, capriciously, or for the purposes of harassment.  (*People v. Douglas* (2015) 240 Cal.App.4th 855, 860-861, 865 (*Douglas*).)  Thus, "an individual who has been released from custody under PRCS is subject to search (and detention incident thereto) so long as the officer knows the individual is on PRCS."  (*Id.* at p. 865.)

The prosecution always bears the burden of proving, by a preponderance of the evidence, that a warrantless search falls within an exception.  (*People v. Williams* (1999) 20 Cal.4th 119, 136-137 (*Williams*); *People v. Romeo* (2015) 240 Cal.App.4th 931, 940.) In the context of probation, that means the prosecution must prove that the officer had pre-search knowledge both of the defendant's probationary status and the existence of a search condition to which he or she consented as part of his or her probation; search conditions are not mandated by statute for every probationer, and probation search clauses are not uniformly worded.  (*Douglas, supra*, 240 Cal.App.4th at pp. 861, 863; *People v. Bravo* (1987) 43 Cal.3d 600, 605-606.)  However, when a defendant is on parole or PRCS, "[i]t is not necessary for the officer to recite or for the People to prove the precise terms of

12

release, for the search condition is imposed by law, not by consent." (*Douglas, supra,* 240 Cal.App.4th at p. 865; see §§ 3067, subd. (b)(3) [parole], 3453, subd. (f) [PRCS].) "As in the case of a parole search, an officer's knowledge that the individual is on PRCS is equivalent to knowledge that he or she is subject to a search condition." (*Douglas, supra,* 240 Cal.App.4th at p. 865.)

"An officer 'knows' a subject is on PRCS if the officer's belief is objectively reasonable" under the totality of the circumstances. (*Douglas, supra,* 240 Cal.App.4th at p. 865.) The question is "whether, judged against an objective standard, the facts available to [the officer] at the moment he [or she] detained [the defendant] would have warranted an officer of reasonable caution to believe [the defendant] was on PRCS." (*Id.* at p. 868.)

Ignoring that he was on PRCS and therefore subject to a statutory search condition at the time he was searched, appellant argues that even if "Pacheco's uncorroborated testimony was sufficient to establish that appellant was on probation, this does not validate the search," because "[n]othing in the record establishes that appellant was searched within the parameters of applicable search conditions." Appellant relies on *People v. Romeo, supra,* 240 Cal.App.4th 931, in which the appellate court reversed the denial of a motion to suppress because the record lacked evidence of the scope of the appellant's probation search conditions. He asserts that "no evidence was presented to establish that appellant had agreed to search conditions," and "if such conditions existed, no evidence was presented to establish that Pacheco had specific knowledge of those conditions."

Respondent contends that appellant forfeited these arguments by failing to present them in connection with his initial motion to suppress. We agree. "[A] defendant who has

13

sought the suppression of evidence at his or preliminary hearing, who then seeks to renew that motion in the superior court, is not entitled to advance theories at the second hearing that were not raised and litigated during the first." (*People v. Bennett* (1998) 68 Cal.App.4th 396, 407; see also *People v. Arebalos-Cabrera* (2018) 27 Cal.App.5th 179, 191.) The Supreme Court has explained the process as follows: "[O]nce the prosecution has offered a justification for a warrantless search or seizure, defendants must present any arguments as to why that justification is inadequate. . . . [I]f defendants detect a critical gap in the prosecution's proof or a flaw in its legal analysis, they must object on that basis to admission of the evidence or risk forfeiting the issue on appeal." (*Williams*, *supra*, 20 Cal.4th at p. 130.) "[W]hen defendants move to suppress evidence, they must set forth the factual and legal bases for the motion . . . . The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification. [Citation.] Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal. '[T]he scope of issues upon review must be limited to those raised during argument . . . . This is an elemental matter of fairness giving each of the parties an opportunity to adequately litigate the facts and inferences relating to the adverse party's contentions.' [Citation.]" (*Id.* at p. 136.)

In the first motion to suppress, appellant asserted only that the search was unsupported by a warrant. In its opposition and through Pacheco's testimony at the preliminary hearing, the prosecution sought to justify the search as a valid probation search. The sole inadequacy appellant pointed out in that

14

justification was that "it doesn't seem credible that the officer knew that he[appellant] was on probation before searching him." The magistrate implicitly rejected appellant's credibility argument by denying the motion.  When he renewed the motion in superior court, appellant did not mention credibility and instead asserted arguments similar to those he presents here.  He now contends "[t]he crux of appellant's argument is the same raised on appeal, that there was insufficient evidence of appellant's probationary status and there was no evidence presented that the officer had the necessary factual predicates to justify such a search."  This is true of the arguments he raised in connection only with the renewed motion, but not the credibility argument he raised with the original.  Appellant's attack on Pacheco's credibility was not sufficient to give the prosecution notice of a claim that the evidence was inadequate.  The latter claim accordingly is forfeited.

Even if the arguments were preserved, we are not persuaded that the motion was erroneously denied.  We are bound to accept the credibility findings of the magistrate.  We also must uphold the magistrate's implied findings, which include the inference that Pacheco, whose duties included monitoring individuals on probation and who testified credibly that he recognized appellant, was aware of appellant's status prior to performing the search.[7]  (See *Douglas*, *supra*, 240 Cal.App.4th at p. 871 ["Part of Detective Bailey's job was to keep tabs on probationers and parolees, and he had access to computerized

---

[7]Appellant did not object to the hearsay nature of this inference below, nor does he attempt to belatedly raise such an objection here.  (*See Douglas*, *supra*, 240 Cal.App.4th at p. 871, fn. 10.)

15

information and updates from the probation department to keep him apprised of probationers' and parolees' status."].) The testimony of a single, credible witness may constitute substantial evidence sufficient to support a conviction or other court finding. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) Here, those findings were that appellant was subject to supervision and that Pacheco was aware of that fact prior to performing the search. The totality of the circumstances supports the conclusion that Pacheco's belief that appellant was subject to warrantless search was objectively reasonable.

Appellant notes in his reply brief that all of the references below were to probation, and not PRCS. He contends that this error demonstrates that Pacheco was unaware of the search conditions to which he was subject. "In examining the totality of the circumstances, however, we cannot turn a blind eye to the undisputed fact that defendant was actually on [PRCS] and consented to a search condition." (*People v. Hill* (2004) 118 Cal.App.4th 1344, 1351 (*Hill*).) As in *Hill,* "we are mindful that erroneous parole status information will not validate an otherwise unlawful search." (*Id.* at p. 1350.) But "the exclusionary rule . . . should not devolve into a game, the outcome of which depends on a terminological discrepancy." (*Id.* at p. 1351.) In *Hill*, a dispatcher erroneously told an officer that the defendant was on parole. Relying on that information, the officer performed a search and recovered stolen property. The officer later learned that the defendant in fact was on probation and had consented to search conditions. (*Id.* at p. 1348.) The facts here, while not identical, are sufficiently analogous. The magistrate inferred that Pacheco learned of appellant's status while performing his duties of monitoring probationers and parolees. It

16

is not clear whether the resources he consulted provided him with erroneous information, or whether he misspoke during the preliminary hearing. Either way, there is no indication that Pacheco acted unlawfully, and appellant was in fact subject to search because he was on PRCS. (See *id.* at p. 1351.)

II.  **Jury Instruction**

  A.  **Background**

Prior to trial, appellant's counsel moved to exclude as irrelevant and prejudicial under Evidence Code section 402 "any mention of my client being on probation or having search conditions." The prosecutor responded that without that context, "jurors are going to wonder why they were just randomly searching this person." The court stated that its "inclination would be to sanitize it but not let [appellant] imply that there's a reason to question" the validity of the stop and search. The court told the parties they could "think about" how they would prefer to sanitize the information; "otherwise, I'll do it my way."

The court returned to the issue two days later, prior to opening statements. It stated, "We were discussing off the record a potential 402 issue. We discussed at some point prior [that the] attorneys wanted to have a resolution of this before we start the People's case. It's been resolved that we would - - or I would tell the jurors that the officers searched the defendant and that search is not at issue and that they are not to consider it as part of their deliberations, with the exact language - - I'm not going to quote it because it's going to come out when I tell the jurors; but I do have that written here before me. And that will resolve any issues that may have arisen because some of the jurors, as I mentioned, brought it up in voir dire about racial profiling. . . ."

17

The prosecutor asked if the court was "going to explain, like, because the jurors had those issues, that is the reason why the court is giving that admonishment." The court said that it was: "I'll read this exactly and then I just ad-lib." The prosecutor responded, "Cause the jurors were talking about their experience in terms of racial profiling and being stopped and all that stuff." The court replied, "That makes it more in context of it having already been litigated and settled." The prosecutor said, "Yes." Appellant's counsel said, "I don't necessarily agree with that; but if the court is ruling that that is what the court is going to do, I do not think we need any additional information other than what was already submitted to the court as far as direction for the jurors with regard to the search." The court responded, "Well, if the search has been litigated and settled, astute jurors are going to think, 'this guy's on probation or parole. He has no legal expectation of privacy. Otherwise, why would they just go up on the guy?'" The prosecutor then reiterated, "I think it gives context to the stipulation." Appellant's counsel then turned the conversation to another pending evidentiary issue. The parties and court never returned to their discussion.

Immediately following opening statements, the trial court told the jury: "Before we get to the testimony, . . . several potential jurors had raised the issue of racial profiling so we were working out a stipulation. And let me read this to you now, kind of like an instruction. Okay. The officers searched the defendant's person, property, and tent on - - what they suspect to be his tent - - September 13th, 2018. The reasons for the search are not at issue here, and they have already been settled and resolved. You are not to consider the reasons for the search for any purpose and not to consider it as part of your deliberations."

After both sides rested, prior to closing arguments, the court and counsel had an off-the-record discussion "as to what we're adding and what we're deleting" from the proposed jury instructions. When they returned to the record, the court made the following statement with no objection from either side: "On page 4, I'm adding the stipulated language, second to the last paragraph that normally is part of [CALCRIM No.] 222, the evidence instruction. That's not in this copy. I'll be adding that." The court subsequently instructed the jury, both orally and in writing, that "The reason for the search of Mr. Alon[s]o's person, personal property and the tent is not at issue here. You are not to consider the reason for the search for any purpose and are not to discuss it in your deliberations."

## B. Analysis

Appellant contends the instruction "was erroneous because it did nothing but foreclose appellant's ability to argue that the police were lying and/or mistaken about his possessing the drugs. As worded, the instruction told the jury that the drugs belonged to appellant. By instructing the jury that there had been a valid search of his person, property and the tent, it foreclosed his ability to challenge the officers' credibility as to . . . both the items found and the reason they were possessed. This violated appellant's right to due process of law and a jury trial under the Fifth, Sixth, and Fourteenth Amendments." Respondent contends this argument is barred by the doctrine of invited error. We agree with respondent.

The doctrine of invited error bars an appellant from challenging a jury instruction if he or she requested the instruction as a conscious and deliberate tactical choice. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 138.) It is designed to prevent

19

an appellant from obtaining a reversal based on an error made at his or her behest.  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.)  "In cases involving an action affirmatively taken by defense counsel, we have found a clearly implied tactical purpose to be sufficient to invoke the invited error rule."  (*Ibid.*)

The record here makes clear that appellant's counsel agreed to and participated in the drafting of the contested instruction for strategic reasons.  The court told the parties that it was inclined to "sanitize" the nature of the search for the jury, which amounted to a partial grant of appellant's motion to exclude.  The court then invited the attorneys to discuss how they wished to handle the matter.  Two days later, after discussion off the record, the court placed on the record that the matter had "been resolved" by a written document the parties had prepared that was now "written here before me."  The document is not included in the appellate record, but there does not appear to be any dispute that the instruction proposed by the parties is the one orally delivered at the beginning and end of trial, and then provided to the jury in writing with the rest of the instructions.  Appellant cannot now complain about an instruction his counsel helped draft.

Appellant asserts that, "[h]aving previously objected, defense counsel indicated she did not agree with the court's position."  He does not indicate when counsel "previously objected," and the record does not reflect any such objection.  His further assertion that defense counsel "did not agree with the court's position" does not appear accurate in the context of the court's exchange with counsel.  Counsel remarked that she did not "necessarily agree with that" after the court said it planned to "read this exactly and then I just ad-lib."  Indeed, she followed

that assertion with, "I do not think we need any additional information other than what was already submitted to the court as far as direction for the jurors with regard to the search." These comments indicate that counsel's objection was to the court's proposed "ad-lib," not to the agreed instruction that "was already submitted to the court." They also belie appellant's claim that the court mischaracterized the instruction as a stipulation.

The situation here is analogous to that in *People v. Harris* (2008) 43 Cal.4th 1269, 1317 (*Harris*)). In *Harris*, the jury asked the court to define the phrase "Life without the possibility of parole/Death penalty." (*Harris*, *supra*, 43 Cal.4th at p. 1317.) "Before replying, the court inquired whether counsel had discussed the matter to work out an answer acceptable to both sides. The prosecutor responded that they had, and the answer was that the meaning of the terms was 'exactly what they sound like; that there is no other definition of them.' Defense counsel affirmed, 'that's correct.'" (*Ibid.*) The court clarified that counsel wanted to provide no further definition, and both counsel stated, "yes." (*Ibid.*) The court then told the jury to consult the instructions it had been given, as "'there's no need to further define them for you at this point." (*Ibid.*) On appeal, the defendant argued that the court's answer "amounted to ignoring the jury's request for a definition." (*Ibid.*) The court found that argument waived because counsel "specifically agree[d] below to the court's handling of the jury's question." (*Ibid.*)

Here, defense counsel similarly worked with the prosecutor to draft an instruction on the search that was "acceptable to both sides." Collaboration on an instruction reflects conscious and deliberate tactical choice. Had counsel wished to preserve the issue for appeal, she could have allowed the court to prepare the

21

instruction and lodged an appropriate objection. The court appears to have read the instruction as drafted by the parties twice, once at the beginning of trial and once at the end, after another off-the-record discussion with counsel to which no objection was recorded. Appellant cannot now challenge the propriety of the instruction.

## III. *Pitchess* Review

Appellant filed a *Pitchess* motion seeking information relating to complaints against officers Pacheco and Mann. The trial court granted the motion as to both officers. It limited the motion to allegations of "perjury, false reporting, and dishonesty" made during the preceding five years. The trial court held an in camera hearing on April 16, 2019, and concluded there were no discoverable records in either officer's file.

Appellant now requests, pursuant to *People v. Mooc* (2001) 26 Cal.4th 1216, that we independently review the sealed transcript of the in camera hearing to determine whether the trial court complied with the procedural requirements of a *Pitchess* hearing and provided all discoverable material to him. Respondent does not object to appellant's request. We review the trial court's ruling for abuse of discretion. (*People v. Cruz* (2008) 44 Cal.4th 636, 670.)

Our review reveals no error. The trial court complied with the procedural requirements of a *Pitchess* hearing, including placing the custodian of records under oath and adequately describing the documents reviewed. (See *People v. Mooc, supra*, 26 Cal.4th at p. 1229 & fn. 4; *People v. Myles* (2012) 53 Cal.4th 1181, 1209.) Its rulings on the discoverability of documents were not an abuse of its discretion.

22

## IV.  Fines and Fees

Appellant contends that the trial court erred by imposing various fines and fees without first conducting a hearing on his ability to pay.  Appellant contends such a hearing was required under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) despite his admitted failure to request such a hearing or otherwise object to any of the fines and fees imposed.[8]  We disagree.

At sentencing, the trial court imposed a $400 restitution fine pursuant to section 1202.4, subdivision (b).  This fine exceeded the $300 minimum restitution fine required by statute at that time.  (See § 1202.4, subd. (b)(1).)  Even prior to *Dueñas*, section 1202.4 permitted a defendant to present information regarding his or her ability to pay any fine amount above the minimum.  (§ 1202.4, subd. (c).)  Thus, by failing to object to the restitution fine and to present evidence he did not have the ability to pay it, appellant forfeited the argument that the trial court erred in imposing the fine without considering his ability to pay.  (See *People v. Avila* (2009) 46 Cal.4th 680, 729; *People v. Smith* (2020) 46 Cal.App.5th 375, 395; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.)  Appellant's challenge to the other fees, assessments, and penalties the court imposed is similarly

---

[8]The Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844, of the following issues:  "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments?  If so, which party bears the burden of proof regarding defendant's inability to pay?"

23

precluded by his failure to object to them below. (*People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1154.)

## V.    One-Year Priors

The parties agree that the two one-year prison prior enhancements added to appellant's sentence should be stricken under section 667.5, subdivision (b), as amended by Senate Bill No. 136 (SB 136) (Stats. 2019, ch. 590, § 1).  The parties are correct.  Under section 667.5, subdivision (b) as amended, such enhancements may only be imposed for certain sexually violent offenses, and appellant's prior prison sentences were not for such an offense.  Furthermore, although SB 136 became effective on January 1, 2020, after appellant's sentencing, we agree with the parties that the change in law applies retroactively to cases not yet final.  (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 341; *In re Estrada* (1965) 63 Cal.2d 740, 742.)

Because the trial court imposed the maximum possible sentence on appellant, there is no need to remand for the trial court to again exercise its sentencing discretion.  (*People v. Lopez*, *supra*, 42 Cal.App.5th at p. 342; see also *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)  Accordingly, we will strike the two one-year prison prior enhancements and direct the trial court to prepare an amended abstract of judgment reflecting the modification.

24

## DISPOSITION

The two one-year sentence enhancements under Penal Code section 667.5 are stricken.  The judgment is affirmed as modified by the striking of the enhancements.  The trial court shall issue an amended abstract of judgment and forward it to the California Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.